ARTURO ACEVEDO HERNÁNDEZ y OTROS, demandantes y recurridos, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* R-79-259      *Resuelto:* 30 de enero de 1981

*Domingo R. Emanuelli* y *Raúl Barquet Trujillo,* abogados de los recurrentes; *Juan T. Peñagarícano, Jr., David Rivé Rivera* y *Calderón, Rosa-Silva & Vargas,* abogados de los recurridos; *Luis Roberto Piñero,* abogado del Comisionado Especial, Hon. Alfonso R. García Martínez, y *Luis E. Pérez Lebrón,* abogado del perito del Comisionado Especial, Dr. Luis E. Mora.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

Este pleito plantea varias cuestiones noveles sobre la naturaleza de la responsabilidad decenal.

El 11 de setiembre de 1969 el señor Acevedo Hernández y otros demandaron a la Corporación de Renovación Urbana y Vivienda de Puerto Rico ("CRUV") por alegados defectos en las casas adquiridas por ellos entre 1966 y 1967 por un precio típico de $6,500.00. Otros dueños de viviendas a bajo costo en el mismo proyecto instaron acciones análogas entre el 9 de mayo de 1973 y el 4 de febrero de 1977. CRUV interpuso demanda contra tercero contra Caparra Construction Corporation ("Caparra"), a quien había contratado para la construcción del proyecto. Se consolidaron los casos y se nombró a un Comisionado Especial.

Aunque no hubo determinación al efecto, surge de autos que el proyecto comenzó a construirse por Caparra el 4 de octubre de 1964 y fue entregado a CRUV antes de julio de 1966. CRUV tuvo que efectuar varias reparaciones, cuya naturaleza se desconoce, antes de vender las viviendas.

El tribunal de instancia concluyó que CRUV era responsable a los demandantes en calidad de contratista por la totalidad de los defectos, "porque terminó de construir el proyecto". En consecuencia, condenó a CRUV a pagar daños materiales montantes a $255,166.56, a resarcir angustias mentales por $150,000.00 y a satisfacer $57,265.00 por gastos

de perito y $58,800.00 por honorarios de abogado. Nada dispuso sobre responsabilidad alguna de Caparra. Acordamos revisar.

Estos hechos plantean las interrogantes siguientes: ¿Está sujeta CRUV a las disposiciones del Código Civil sobre las acciones decenal, redhibitoria y cuantiminosa? De estarlo, ¿responde CRUV en este caso como contratista o como vendedora? ¿Cuál es la relación entre reparar y construir? De ser CRUV contratista, ¿hasta dónde alcanza su responsabilidad? ¿Es ésta de naturaleza solidaria, *in solidum*, o mancomunada? ¿Cuáles son los requisitos a satisfacer para fijar la responsabilidad que pueda existir? ¿A quién corresponde la carga de la prueba respecto a tales requisitos? Fuera de su condición como contratista o vendedora, ¿respondería CRUV como promotora, si es que lo fuese, del proyecto? Examinemos estos problemas.

1. *La sujeción de CRUV a las disposiciones aplicables del Código Civil.*

CRUV persigue propósitos de alto interés público: "la producción de viviendas a bajo costo y la renovación de las ciudades y pueblos a un ritmo que remedie la escasez de viviendas, acelere la eliminación de arrabales y logre el objetivo de proveer a cada familia puertorriqueña de una vivienda higiénica y segura en un ambiente apropiado". Exposición de Motivos de la Ley Núm. 88 de 22 de junio de 1957 (17 L.P.R.A. sec. 21 (nota a la sección)). A tales fines y como sucesora de la Autoridad sobre Hogares, 17 L.P.R.A. sec. 22, CRUV tiene la facultad de construir y reparar viviendas. 17 L.P.R.A. secs. 38(b), 40. Aunque sus objetivos son más abarcadores que los que usualmente guían el sector privado, no existe nada en la ley o su historial indicativo de intención alguna de crear un fuero especial para CRUV que la exima de la responsabilidad que pueda corresponderle en determi-

nados casos bajo los Arts. 1373 y 1483 del Código Civil, 31 L.P.R.A. secs. 3841 y 4124. (¹)

En muchos países civilistas, las relaciones entre los ciudadanos y el Estado y sus agencias están afectadas por la jurisdicción contencioso-administrativa. (²) Así ocurrió en Puerto Rico por muchos años, donde tal jurisdicción se desarrolló mucho antes de la extensión a la Isla, del Código Civil. Véanse: la R. C. de 30 de enero de 1855; *Las Leyes de Indias*, Est. Tip. de Pedro Núñez, 1890, Vol. 13, pág. 358 y ss.; 15 BRLJ 70. La jurisdicción contencioso-administrativa fue abolida en Puerto Rico, sin embargo, por la Ley de 10 de marzo de 1904. En ausencia de legislación especial o demostración de interés público que exija válidamente eximir a CRUV de las disposiciones de los Arts. 1373 y 1483 del Código Civil, resolvemos en consecuencia que tal corporación está sujeta

---

(¹) El Art. 1373 dispone:

"El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina, o si disminuyen de tal modo este uso que de haberlos conocido el comprador, no la habría adquirido, o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos."

El Art. 1483 provee:

"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

"Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

(²) En Francia, por ejemplo, se limitan al sector privado las reglas sobre el promotor inmobiliario. *Encyclopédie Dalloz*, 2da ed., Droit Civil, "Promotion Immobiliere", pár. 10. En España, la Legislación de Viviendas de Protección Oficial, aprobada por D. de 24 de julio de 1963, y el Reglamento de Protección Oficial, aprobado por el D. de 24 de julio de 1968, fijan reglas especiales a seguirse en los casos de viviendas de tal naturaleza. El Art. 111 del Reglamento reduce el plazo de garantía, por ejemplo, a cinco años. Aranzadi, *Nuevo Diccionario de Legislación*, Pamplona, Ed. Aranzadi, 1977, Vol. XXIV, pág. 1374.

a las reglas generales de la responsabilidad que los referidos artículos imponen. (³)

2. *La responsabilidad de CRUV como vendedora y contratista.*

No existe disputa entre las partes sobre el hecho de que CRUV responde como vendedora, condición que limitaría considerablemente su responsabilidad conforme con lo prescrito por el Art. 1373 del Código Civil. La controversia versa, en parte, sobre si CRUV es también contratista.

Para resolver esta cuestión es imprescindible determinar si CRUV se convirtió en contratista al reparar las obras antes de venderlas. La doctrina y la jurisprudencia reconocen generalmente que "reparar" equivale a "construir", cuando las reparaciones afectan algún elemento esencial de la obra. J. Herrera Catena, *Responsabilidades en la Construcción*, Granada, 1974, Vol. I, pág. 249 y ss.; L. Díez Picazo, *Estudios sobre la Jurisprudencia Civil*, Madrid, Ed. Tecnos, 1966, Vol. 1, pág. 628; sentencias de 19 de febrero de 1959 y 9 de junio de 1969; García Cantero, *La Responsabilidad por Ruina de los Edificios ex Artículo 1591 del Código Civil*, 16 Anuario de Derecho Civil 1053, 1103 (1963); D. Rubino, *Dell' Appalto*, Roma, 1969, págs. 6, 110, 262, 265 (parte de la colección Scialoja e Branca, *Commentario del Codice Civile*). Adviértase que, en este sentido, el criterio para la imposición de responsabilidad en el caso de reparaciones es más estricto que el sentado en *Géigel* (85 D.P.R. 46) y *Pereira* (95 D.P.R. 28). No basta aquí que el vicio exceda la medida de las imperfecciones que cabe esperar en una construcción. Hay que demostrar que la reparación afecta un elemento estructural, que el resultado de la reparación amenaza de ruina la obra. Herrera Catena, *loc. cit.*; Díez Picazo, *loc. cit.*

(³) Para la situación en España, véase: J. M. Fernández Hierro, *La Responsabilidad Civil por Vicios de Construcción*, Publicaciones de la Universidad de Deusto, Bilbao, 1976.

■ En el caso de autos se desconoce la naturaleza de las reparaciones realizadas por CRUV. No es posible precisar, en consecuencia, si CRUV se convirtió en contratista al efectuarlas. Debe devolverse el caso a instancia para la determinación correspondiente.

Esta conclusión no nos releva, sin embargo, de considerar otros aspectos de este caso, pues veremos que faltan otros hechos para la solución de este litigio, así como la exposición de las normas aplicables a ellos.

3. *Los problemas pertinentes en caso de existir pluralidad de contratistas. Las cuestiones de la solidaridad y la concausalidad.*

El tribunal de instancia presumió que, de completar la obra otro contratista, la responsabilidad de los dos constructores es solidaria. Tal norma es excesivamente abarcadora.

■ Cuando dos o más constructores se obligan directamente a la realización del todo de una obra, puede caber la responsabilidad *in solidum* o la solidaria, (⁴) de acuerdo con la doctrina de algunos países civilistas. Rubino, *op. cit.*, págs. 54-55; *Encyclopédie Dalloz*, "Contrat d'Enterprise", págs. 348-349; Mazeaud y Mazeaud, *Traité Théorique et Pratique de la Responsabilité Civile*, 6ta ed., 1978, T. II, pág. 119. En derecho español, no obstante, la solidaridad no se establece normalmente fuera de pacto o común intención de las partes, aun cuando se asuma conjuntamente la ejecución de la obra. Sentencia de 19 de febrero de 1959; García Cantero, *op. cit.*, pág. 1099. Cuando la ruina es originada por culpa conjunta, sin embargo, o cuando es indeterminable la causa de la ruina, nace la solidaridad. De lo contrario, cada contratista responde tan solo de lo que se comprometió a construir. García Cantero, *supra*, 1054, 1095, 1099, 1103; Herrera Catena,

---

(⁴) Respecto a la diferencia entre la responsabilidad solidaria y la responsabilidad *in solidum*, véase: J. R. León Alonso, *La Categoría de la Obligación "in Solidum"*, Publicaciones de la Univ. de Sevilla, 1978, pág. 6 *et seq.*

*op. cit.*, T. I, págs. 128–29, n. 106; Hernández Hierro, *op. cit.*, pág. 137; J. Cadarso Palau, *La Responsabilidad Decenal de Arquitectos y Constructores*, Madrid, Ed. Montecorvo, 1976, pág. 309. *Cf.* Mazeaud y Mazeaud, *op. cit.*, T. II, pág. 119; G. Liet-Veaux, *Le Droit de la Construction*, 5ta ed., París, Ed. Celse, 1978, pág. 316; sentencia de 17 de mayo de 1967.

■ En el caso de autos no hubo obligación de CRUV de construir el todo, por lo que, aun bajo la doctrina francesa o italiana, de adoptarse aquí, no cabría responsabilidad de CRUV de naturaleza solidaria o *in solidum*. Tampoco se le puede imputar responsabilidad de tales órdenes bajo la doctrina del pacto o intención de las partes. Por el mero hecho de reparar o aun de completar la construcción de una obra, un contratista no asume la responsabilidad por vicios de la obra debidos a su predecesor. La situación de Caparra es distinta. Caparra se comprometió a construir a solas la totalidad de la obra. Su incumplimiento del contrato en las circunstancias presentes no la puede relevar, como premio, de responder por la totalidad de los daños.

■ CRUV responde en este caso tan solo por los vicios causados por los trabajos realizados por ella. Como tampoco surge de autos el nexo causal, si alguno, entre lo hecho por ella y los alegados defectos de construcción, debe devolverse el pleito a instancia para que se determine también si existe ese nexo causal. La carga de probar que éste no existe corresponde al contratista interesado. García Cantero, *op. cit.*, pág. 1095; Herrera Catena, *op. cit.*, T. II, pág. 135 *et seq.; Rassegna di Giurisprudenza sul Codice Civile*, Milán, Ed. Giuffrè, 1970, T. IV, págs. 824–25, n. 11. Si lo que surge de la prueba, en cambio, es la concausalidad o concurrencia de culpas, CRUV es responsable de los vicios de construcción que pueda haber habido, como también lo es si la responsabilidad de ambos contratistas está tan íntimamente ligada la una con la otra que no es posible separarlas.

### 4. *El promotor y la responsabilidad decenal.*

En algunos países, por jurisprudencia y en otros por legislación, se ha reconocido la nueva figura del promotor como legitimado pasivo de la responsabilidad decenal en grado comparable al contratista, al arquitecto y al constructor-vendedor. Véanse: Sentencia de 28 de noviembre de 1970 (Esp.); sentencia de 11 de octubre de 1974 (Esp.); sentencia de 17 de octubre de 1974 (Esp.); sentencia de 28 de octubre de 1974 (Esp.); Herrera Catena, *op. cit.*, T. II, pág. 323 *et seq.;* Cadarso Palau, *op. cit.*, pág. 239 *et seq.;* Ley 71-579 de 16 de julio de 1971, Ley 78-12 de 4 de enero de 1978 (Fr.); Liet-Veaux, *op. cit.*, pág. 193; Mazeaud y Mazeaud, *op. cit.*, pág. 115 *et seq.;* Arts. 1831.1 a 1831.5 y 1792 a 1792.3 del Código Civil francés; *The Defective Premises Act 1972*, Halsbury's Statutes of England, 3ra ed., Vol. 42, pág. 1395 *et seq.*

Es innecesario discutir aquí la responsabilidad de CRUV como promotora o aun la posición de esta figura en nuestro ordenamiento jurídico, ya que estas cuestiones no fueron planteadas en instancia y, aun de haber sido planteadas, no sería responsable CRUV. Tanto en España como en Francia, el promotor asume junto a muchas otras funciones la iniciativa de construir la totalidad de la obra. R. Saint-Alary, *Droit de la Construction*, París, Presses Universitaires de France, 1977, pág. 303. CRUV no asumió tal responsabilidad.

*Por las razones expuestas, se devuelve el caso a instancia para procedimientos ulteriores consistentes con esta opinión.*