ANA MILADYS SANTIAGO NIEVES, demandante y recurrente, *v.* ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES, demandada y recurrida.

*Número:* RE-86-266    *Resuelto:* 25 de noviembre de 1987

*Flor Casiano Báez*, abogado de la recurrente; *Rafael Alen González* y *José R. León Hernández*, abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

El Sr. Pablo Galarza falleció como consecuencia de las lesiones recibidas en un accidente automovilístico ocurrido el 23 de enero de 1981. Su viuda, la demandante recurrente Ana Miladys Santiago y sus hijos menores de edad quedaron cubiertos por los beneficios de la Ley de Protección Social por Accidentes de Automóviles, que rige a la Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.), 9 L.P.R.A. sec. 2051 *et seq.*

El 30 de marzo de 1981, la Directora Ejecutiva de la A.C.A.A. emitió una decisión, por conducto del Gerente de la Oficina Regional, en la cual se determinó que los demandantes recurrentes tenían derecho a recibir las cantidades máximas de compensación a tenor con la antes citada ley de la A.C.A.A. Las referidas cantidades serían satisfechas mediante pagos parciales.

La demandante recurrente Ana M. Santiago solicitó el 11 de mayo de 1981 a la A.C.A.A. que se le adjudicara un pago global para poder comprar y construir una casa para su familia. Se consiguió[1] y se aprobó a Servicios Profesionales J.V. para la construcción de la obra. Mediante decisión de la Directora Ejecutiva, el 11 de agosto de 1981 se autorizó el pago global por la suma de $14,800. Dicha decisión en lo pertinente establecía que:

Habiéndose determinado por la investigación practicada en el caso que la inversión propuesta es beneficiosa a los fines de la Ley, la Directora Ejecutiva de la Administración de Compensaciones por Accidentes de Automóviles le imparte su aprobación y ORDENA al Jefe de Contabilidad a expedir (10) cheques distribuidos en la siguiente forma: (2) cheques por $4,583.32 cada uno a favor de Ana M. Santiago Nieves y Servicios Profesionales J.V. (vendedores); (2) cheques por $704.17 cada uno a favor de Jennifer Galarza Santiago (menor); (2) cheques por $704.17 cada uno a favor de Juan P. Galarza Santiago (menor); (2) cheques por $704.17 cada uno a favor de Javier Galarza Santiago (menor)[,] y (2) cheques por $704.17 cada uno a favor de Luis D. Galarza Santiago (menor). Incluir en los cheques de los menores a Ana M. Santiago Nieves (madre) y Servicios Profesionales J.V. (vendedores). *El pago se efectuará en (2) etapas sujeto a presentación de facturas y verificación de la construcción.*

Las partes deberán esperar que se expida el cheque y se les comuniquen las instrucciones pertinentes antes de proceder a formalizar escritura o contrato escrito si ésta fuera necesaria en el caso. Se requiere una Autorización Judicial para el desembolso del dinero de los menores y que se garanticen sus participaciones en Escritura de Acta de Edificación. (Énfasis suplido.) Apéndice, pág. 13.

---

[1] Existe controversia, aún no resuelta por el tribunal de instancia, sobre si fue el técnico de inversiones de la agencia o la recurrente Santiago Nieves quien gestionó a dichos contratistas.

El 16 de septiembre de 1981 el Tribunal Superior, Sala de Ponce, mediante sentencia, dio la aprobación judicial a la decisión de la Directora Ejecutiva.

El 8 de octubre de 1981 la A.C.A.A. expidió diez cheques montantes a la cantidad de $14,800 a nombre de la recurrente Ana M. Santiago, de cada menor respectivamente representado por su madre y de Servicios Profesionales J.V. y los entregó a la recurrente Santiago Nieves y al Sr. Julio Vélez, representante del contratista, todos ese mismo día, sin alegadamente haberse verificado la construcción y tampoco visto las facturas. La recurrente endosó y entregó dichos cheques al representante de Servicios Profesionales J.V. Los contratistas comenzaron la construcción, pero no llegaron a terminarla. Éstos aparentemente abandonaron la jurisdicción y al día de hoy la obra sigue sin terminar.

El 30 de julio de 1982 la recurrente presentó querella ante el Departamento de Asuntos del Consumidor (D.A.C.O.) contra el Sr. Julio Vélez, representante del contratista, por no haber terminado la obra. En dicha querella no se menciona a la A.C.A.A., ni se hace alegación alguna en su contra. Dicha querella no ha sido resuelta todavía.(²)

El 16 de mayo de 1984 la recurrente y los menores de edad presentaron demanda de "*Injunction* y Daños y Perjuicios" contra la A.C.A.A. y le imputan responsabilidad por haber incumplido los términos de la orden de 11 de agosto de 1981 y haber otorgado todos los cheques en un mismo día, sin verificar la compra y construcción de la obra. El tribunal determinó, sin objeción de las partes, que la causa se ventilaría como una de carácter ordinario.

Luego de varios incidentes procesales, la A.C.A.A. presentó moción de desestimación únicamente en cuanto a

---

(²) Aparentemente los querellados no pudieron ser citados.

la demandante recurrente Ana M. Santiago, en la que alegó que la causa de acción de esta última estaba prescrita a tenor con el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5290, por ser ésta una acción de daños y perjuicios bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Expuso, además, que la demandante recurrente tuvo conocimiento del daño cuando menos desde el 30 de julio de 1982 (fecha de la presentación de la querella en D.A.C.O.), y que cuando presentó la demanda el 16 de mayo de 1984, ya había transcurrido más de un año.[3] El tribunal acogió el planteamiento de la A.C.A.A. y dictó sentencia parcial que desestimó las reclamaciones personales de la demandante recurrente Santiago Nieves. Acude ante nos dicha parte. Expedimos auto de revisión.

Presenta la recurrente tres argumentos para sostener su posición de que cometió error el tribunal de instancia al aplicar el término prescriptivo de un año. El primero de ellos es que:

> La obligación de los contratistas independientes para con los demandantes era construir y entregar la casa, *y la de la ACAA era supervisar y verificar la construcción antes de efectuar los pagos.* Las dos partes establecieron *una relación contractual* y se obligaron con los demandantes e incumplieron con sus obligaciones. (Énfasis suplido.) Solicitud de Revisión, pág. 3.

Al ser ello así, alega la recurrente que se trata de una acción derivada de un contrato, Art. 1054 del Código Civil, 31 L.P.R.A. sec. 3018, por lo que le aplicaría la prescripción general de quince años determinada en el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. *Rosario Quiñones* v. *Municipio de Ponce*, 92 D.P.R. 586 (1965); *Saavedra* v.

---

[3] En sus contestaciones a la demanda y la demanda enmendada, la A.C.A.A. levantó oportunamente la defensa de prescripción.

*Central Coloso, Inc.*, 85 D.P.R. 421 (1962); *Camacho* v. *Iglesia Católica*, 72 D.P.R. 353 (1951). No tiene razón.

La acciones derivadas de contratos tienen por objeto que se cumplan las promesas contractuales sobre las que las partes de un contrato otorgaron su consentimiento. Surgen éstas de las obligaciones que libremente han convenido los contratantes y nacen de una acción u omisión voluntaria por la que resulta incumplida una obligación anteriormente constituida. La culpa o negligencia a que se refiere el Art. 1802, *supra*, por su parte, es aquella no relacionada con una obligación anterior y que daba lugar a las acciones que hasta la publicación del Código Civil español se conocían con el nombre de cuasidelitos y antiguamente, en la ley común, se denominaban ex delito. *Arroyo* v. *Caldas*, 68 D.P.R. 689 (1948). Esta culpa extracontractual no nace por la voluntad de las partes, sino del incumplimiento de unas obligaciones y unos deberes impuestos por la ley. En *Busó et al.* v. *Martínez*, 18 D.P.R. 1035, 1037 (1912), señalamos que:

> La diferencia que existe entre las acciones fundadas en contratos y aquellas que surgen de la culpa (*tort*) ha sido bien definida e interpretada. Un perjuicio (*tort*) consiste en la violación de un derecho que se concede o en la omisión de un deber impuesto por la ley. El incumplimiento de un contrato consiste en hacer caso omiso de un derecho que se ha concedido o de una obligación en que se incurre mediante un convenio celebrado entre las partes.

Luego en *Mejías* v. *López*, 51 D.P.R. 21, 26 (1937), expresamos que:

> A veces se hace difícil distinguir entre acciones *ex contractu* y acciones *ex delicto*, pero, en líneas generales ha quedado bien establecido que las primeras se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito y las segundas se fundan en el quebrantamiento de un deber impuesto por la ley que ordinariamente surge a

virtud de algún acto negligente o culpable sin referencia a contrato alguno celebrado entre las partes, pero que puede surgir lo mismo independientemente de cualquier contrato que con ocasión de ciertas relaciones contractuales, como se alega que surgió en el caso concreto que estamos considerando.

No podemos coincidir con la recurrente cuando señala que la decisión de la Directora Ejecutiva de la A.C.A.A. constituye un contrato entre los beneficiarios de la víctima del accidente y dicha agencia. La decisión fue emitida en claro cumplimiento de un deber impuesto al Director Ejecutivo por la Ley de Protección Social por Accidentes de Automóviles, *supra*, así como por el reglamento promulgado a tenor con la misma. Dicha ley en su Sec. 5 dispone que:

(1) La Administración establecerá, mediante reglamento, las normas que habrán de regir para el pago de todos los beneficios que provee este Capítulo, tanto a las víctimas de accidentes como a sus beneficiarios, disponiéndose que:

(a) Cuando proceda el pago de un beneficio por desmembramiento, el mismo se liquidará sistemáticamente de manera que los beneficios que reciba la víctima de la Administración no excedan del equivalente de $50 semanales.

(b) Los beneficios por muerte se pagarán a razón del equivalente de $50 semanales por unidad familiar. La Administración determinará mediante reglamento qué es una unidad familiar y cómo se pagará el beneficio cuando no exista ésta.

(c) La Administración podrá autorizar pagos mayores del equivalente de $50 semanales o la liquidación del beneficio en una sola suma, cuando se demuestre que ello resultará en beneficio de la víctima o de sus beneficarios.

(d) Si el importe del beneficio a que se tiene derecho fuera mayor de dos mil dólares ($2,000), la Administración podrá requerir de la víctima o sus beneficiarios que utilicen dicho beneficio o una parte del mismo para la compra de una finca o vivienda, o para adquirir un negocio productivo o hacer alguna otra inversión lucrativa. 9 L.P.R.A. sec. 2055.

El reglamento aprobado a tenor con la ley establece a su vez que:

*Sección 13 — Procedimiento de adjudicación por reclamaciones*

(1) El Director Ejecutivo investigará y resolverá las reclamaciones que se hagan a la Administración utilizando para ello los procedimientos que considere convenientes siempre que en ellos se garantice el derecho de las partes. 9 L.P.R.A. sec. 2061.

Específicamente sobre la decisión que está aquí en controversia dispone la Regla 14 de dicho reglamento que:

REGLA 14

*LIQUIDACIÓN ACELERADA DE BENEFICIOS*

A. Pagos Acelerados

El Director Ejecutivo determinará, *a su discreción,* si deben concederse en casos que considere extraordinarios, pagos semanales mayores de $50 o la liquidación de beneficios en una sola suma, cuando se demuestre a su satisfacción que ello resultaría provechoso para los beneficiarios. *Las decisiones del Director Ejecutivo a este respecto no son revisables ni apelables.* (Énfasis suplido.) Anejo XI, pág. 25.

Debe quedar claro, pues, que dicha decisión no constituye un contrato ya que no existía un acuerdo de voluntades que generara una obligación, situación o estado de derecho resultante de un convenio. Como dice Puig Brutau: "[c]on criterio más estricto la palabra contrato hace referencia al acuerdo de voluntades de dos o más partes por el que se crean, modifican o extinguen relaciones pertenecientes al Derecho de obligaciones. En este sentido se ha dicho que todo contrato es un negocio jurídico bilateral, pero que no todo negocio jurídico bilateral es un contrato". J. Puig Brutau, *Fundamentos de Derecho Civil,* Barcelona, Ed. Bosch, 1963, T. 2, Vol. II, pág. 11. En cambio, dice Ossorio y Morales, "si los sujetos persiguen un

interés común y mediante el acuerdo de voluntades colaboran los unos junto a los otros a su realización, nos encontramos ante una figura jurídica a la que no debe en puridad denominarse contrato, ni puede aplicársele la mayor parte de las normas específicas dictadas para regular la contratación". (Énfasis del original.) J. Ossorio y Morales, *Notas para una teoría general del contrato*, 49 Rev. Der. Privado 1071, 1074 (1965).

En el caso de autos no hubo negociación para someter sus conductas recíprocas al establecimiento entre ellos de derechos y obligaciones. La Directora Ejecutiva actuó conforme a la discreción que le otorga la ley y el reglamento de la agencia; no es ésta de carácter contractual.

■ En segundo lugar argumenta la recurrente que: "En el presente caso es aplicable el plazo decenal (10 años) que fija el Artículo 1483 del Código Civil, 31 L.P.R.A. sec. 4124, sobre responsabilidad de los daños y perjuicios por vicios de construcción, término prescriptivo que comienza a contar desde que se concluye la obra. Aplicando dicho término las reclamaciones de la recurrente no están prescritas y ACAA le es responsable solidariamente con los contratistas." Solicitud de Revisión, pág. 4.

Carece totalmente de méritos dicha contención. Surge meridianamente claro de dicho artículo que el mismo se refiere a la responsabilidad del *contratista* y del *arquitecto* de una obra sobre los daños y perjuicios que cause la ruina de ésta debido a vicios de construcción. Dicho artículo es aplicable solamente a las personas que llevaron a cabo la obra, el contratista, los técnicos y subcontratistas en cuanto a los defectos a su cargo en la obra. *Acevedo Hernández* v. *Viñas Sorbá*, 111 D.P.R. 633 (1981); *Carreras* v. *González Santos*, 111 D.P.R. 819 (1981); *Acevedo Hernández* v. *C.R.U.V.*, 110 D.P.R. 655 (1981). El alegado acto negligente imputado a la recurrida, según surge de la demanda,

consistió en violar los términos de la propia decisión de 31 de agosto de 1981, en la cual disponía que el pago se efectuara en dos etapas, sujeto a la presentación de facturas y verificación de construcción, y expedir en un mismo día los diez cheques por la totalidad del pago. Dicho acto en nada se relaciona con los vicios de construcción, tal y como se prevee en el Art. 1483 (31 L.P.R.A. sec. 4124).

■ Por último señala la recurrente que: "Respetuosamente se entiende que la aplicación es errónea porque a[u]n aplicando el término de un año, dicho término prescriptivo *se suspende* con la radicación de la querella en DACO hasta que DACO emita su decisión final y firme." Solicitud de Revisión, pág. 5.

Sobre ésta, basta recordar, como señalamos antes, que en dicho proceso administrativo la A.C.A.A. no fue parte y tampoco se hizo alegación alguna en su contra.

*Se anulará el auto expedido y se confirmará la sentencia parcial objeto de este recurso.*