*776 TEXTO COMPLETO DE LA RESOLUCION
El 16 de octubre de 2002 se presentó ante este Tribunal el recurso de epígrafe. Los peticionarios “solicitan [que] se revise la resolución emitida por la Oficina Regional de Mayagüez del Departamento de Asuntos del Consumidor (DACO) en el caso de Juan Gómez Ortiz, querellante v. José González Tirado, Blanca González Tirado h/n/c Caribbean Realty, José L. Cabot, R. G. Premier Bank of Puerto Rico Mortgage, querellados; querella #500001400.” (Recurso de Certiorari, página 1). La referida resolución, conforme se alega, “impone a los querellados-recurrentes devolver $2,000.00 de la comisión cobrada al querellante y a éstos junto al querellado Cabot (solidariamente) pagar al querellante $1,920.60 de los intereses pagados, $500.00 por las inspecciones y $1,000.00 por daños.” (Recurso de Certiorari, página. 5).
Los recurrentes nos refieren a las páginas 1 a 14 del apéndice a los fines de que examinemos la resolución recurrida. De su epígrafe no surge, como se alega, que R. G. Premier Bank sea uno de los querellados. Tampoco surge de su texto.
Independientemente de lo anterior, en el recurso ante nosotros, Caribbean Realty imputa a DACO los siguientes errores:

“Primer error: Erró el Departamento de Asuntos del Consumidor (DACO) al concluir que existió entre Caribbean Realty y José L. Cabot un contrato verbal para la construcción de las residencias.

Segundo error: Erró el Departamento de Asuntos del Consumidor (DACO) al ordenar que Blanca González y José González devolviesen $2,000.00 de la comisión al querellante.

Tercer error: Erró el Departamento de Asuntos del Consumidor (DACO) al imponer a Blanca González y José González el reemoblsar al querellante $1,920.60 de intereses pagados.

*777
Cuarto error: Erró el Departamento de Asuntos del Consumidor (DACO) al imponer a Blanca González y José González el pago de $1,000.00 en daños al querellante.

Quinto error: Erró el Departamento de Asuntos del Consumidor (DACO) al no concluir que hubo novación entre el contrato de opción de compra y el acuerdo. ”

Examinémoslos.
I
El caso de epígrafe se origina cuando el Sr. Juan A. Gómez Ortiz presentó una Querella ante DACO donde figura como “Querellado Caribbean RealtyEn la misma se recogen los hechos aquí en controversia. La transcribimos:

“Comparece ante este Departamento Juan A. Gómez Ortiz, soltero, para alegar lo siguiente:

El 26 de octubre de 1999, firmó una ‘Opción de Compraventa’ de un solar remanente localizado en el proyecto Haciendas de Flamboyan, Carr. 110, k. 9.6 del Municipio de Aguadillo, PR.

En el mismo se especifica que ‘se construirá una unidad de vivienda de tres habitaciones dormitorios, dos baños, sala, comedor, cocina, balcón y marquesina. ’ Se especifica que ‘el precio de venta es de $79,000.00 y que la parte vendedora confiere a la parte compradora una opción por la cantidad de dos mil dólares’. Que ‘la suma depositada será acreditada al precio de venta del día del cierre. ’

El 31 de diciembre de 1999, el querellante firma un ‘Acuerdo’ entre las partes donde se especifica que los optarlos desean adquirir el solar y edificar sobre el mismo una estructura dedicada a la vivienda. Indica, además, que la corrededora y los optarlos han convenido que la estructura a construirse sobre el solar descrito consta de las siguientes facilidades: tres habitaciones dormitorios, dos baños, sala, comedor, cocina, laundry y marquesina. Que dicha estructura será construida a tenor con el plano modelo y especificaciones preparados por el Ing. Luis Vélez y que para poder llevar a cabo la compraventa, los optarlos habrán de solicitar un préstamos a la institución bancaria a fines de hacer viable el financiamiento de la compra. El querellante gestionó el financiamiento y el 2 de marzo de 2000, le fue concedido a través del Tradicional Bankers y lo terminó vendiendo RG Mortgage.

Una vez le otorgan el financiamietno al querellante, éste firma un ‘Contrato de Construcción de Obra’ a los efectos de que el contratista construya una edificación para fines residenciales a favor del dueño de la obra en el solar descrito sujeto a las ‘Cláusulas y Condiciones’ que se especifican en el contrato. Que el precio estipulado entre los contratantes para la realización de la obra es de $40,000.00. Que el término para entregar la obra terminada será de nueve meses aproximadamente a partir de los treinta días de la aprobación de la institución bancaria, salvo que cualquier evento fuera de control del contratisa impida dicho término.

El banco procedió a desembolsar la primera etapa y segunda etapa. El contratista recibió el dinero de las primeras dos etapas y lo consumió.

Al presente, la construcción se encuentra paralizada y la instituicón bancaria no ha desembolsado el dinero correspondiente a la tercera etapa. Mientras tanto, el querellante se encuentra pagando intereses por el préstamo de construcción.

Querellante se encuentra molesto, ya que el contratista no ha terminado la construcción de la casa a pesar de haber acordado que la misma se efectuaría en nueve meses. Además, el contratista fue seleccionado por el ‘Realtor’, no por su persona.

*778
Querellante alega que existen defectos de construcción en las obras efectuadas tales como: plomería (no se tiraron todas las instalaciones de agua caliente tales como bidet, lavamanos); la losa de piso de algunas partes no se fundió en su totalidad.

Querellante ha reclamado por los defectos y por el tiempo que ha transcurrido en terminar las labores y el querellado no le ha ofrecido una justificación razonable.

Petición: Que se le reembolsen los intereses pagados durante el tiempo que la contrucción ha estado paralizada, que se corrijan los defectos de construcción; si el querellado no puede continuar las obras, se realice un relevo de contrato al contratista y se busque a otra persona para que termine las labores o lo que en derecho proceda.

Evidencia: carta de reclamación, contrato de construcción de obra, acuerdo, contrato de opción de compraventa” 
DACO acogió la querella y ordenó la comparecencia de los querellados. Estos comparecieron negando responsabilidad alguna. DACO designó un ingeniero como perito para que inspeccionara la obra y rindiese un informe describiendo los trabajos realizados. El perito redactó un informe e incluyó un estimado de costos de la obra. Desconocemos cuáles fueron las recomendaciones y conclusiones del informe, toda vez que la parte peticionaria no somete la totalidad del informe. (Véase apéndice 21 del recurso).
DACO celebró vista administrativa y emitió su Resolución el 3 de septiembre de 2002. En la misma dispuso que Caribbean Realty tuvo la intención de adquirir los terrenos del señor Alejandro Vélez para desarrollarlos en el Proyecto Haciendas del Flamboyán y que hizo gestiones de financiamiento, las cuales no logró. DACO determinó que Caribbean Realty fue la que invirtió en el proyecto al pagar otros gastos ya descritos y los cobró de la ganancia neta. Concluyó que al así actuar fungió como promotor/urbanizador y no meramente como una simple corredora de bienes raíces. (Véase, Apéndice 1 del Recurso de Revisión).
En.su dictamen, DACO señalo los estimados de las etapas terminadas basándose en el informe del perito, quien estimó las mismas en $7,777.27, toda vez que el banco desembolsó $10,000.00.
Dispuso que a pesar de la cláusula que relevaba a Caribbean Realty de responsabilidad, contenida en el Acuerdo, éstos hicieron caso omiso de ella al intervenir cuando el señor Gómez Ortiz le comunicó sobre la paralización de la construcción. Concluyó que el contrato de opción sufrió una novación modificativa por el Acuerdo, pero aún se mantenía lo establecido en el contrato de opción original.
DACO determinó que el señor Gómez Ortiz nunca interaccionó, ni conoció a los dueños de los solares. Tampoco los propietarios de los solares participaron en la concepción del proyecto y demás etapas o establecieron condiciones de negocio con Blanca y José González Tirado y con Juan Gómez Ortiz. DACO tomó conocimiento administrativo y oficial de otros casos radicados en DACO por otros ciudadanos ante DACO por los mismos hechos contra Blanca y José González Tirado y José L. Cabot.
Al declarar con lugar la querella, DACO ordenó a Blanca y José González Tirado a devolver $2,000.00 de la comisión cobrada al recurrido por un servicio incompleto. Le impuso a Blanca y José González Tirado y José L. Cabot solidariamente las siguientes partidas a ser reembolsadas al recurrido: $1,920.60 de los intereses pagados por el recurrido desde 18 octubre de 2000, fecha de paralización de la obra hasta mayo de 2001, más $500.00 por concepto de la partida cobrada por las inspecciones de las dos (2) etapas, en vista de que, aunque fueron terminadas, éstas sufrieron deterioro, más $1,000.00 por concepto de daños y perjuicios para un total de $5,420. (Véase, Apéndice 1 del Recurso de Revisión).
*779 Inconforme, Caribbean Realty acude ante nos. Plantea que dicho foro incidió al concluir que existió un contrato verbal entre Blanca y José González Tirado y José L. Cabot para la construcción de las residencias; al ordenar a los aquí recurrentes la devolución y reembolso de parte de la comisión cobrada, intereses pagados mientras la obra estuvo paralizada, y el pago de daños. Por último, señaló que DACO erró al no concluir que hubo novación extintiva entre el contrato de opción de compra y el acuerdo. Los examinamos en conjunto.
II
La norma establecida en el derecho administrativo es que los tribunales tienen la obligación de guardar la más profunda deferencia a las agencias administrativas en los asuntos ante su consideración, más aún en los asuntos sobre los cuales dichas agencias tienen un grado de experiencia y conocimiento vasto. El Tribunal Supremo ha sostenido que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto. La revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente de forma tal que su actuación constituya un abuso de discreción. Los tribunales deben darle peso a las interpretaciones que la agencia administrativa hace de aquellas leyes particulares que le corresponde poner en vigor. Véase, Municipio de San Juan v. Junta de Calidad Ambiental, 2000 JTS 193; Fuertes v. ARPE, 134 DPR 947, 953 (1993).
De conformidad con la Ley de Procedimiento Administrativo Uniforme, las determinaciones de hechos de las agencias administrativas serán sostenidas por los tribunales si se basan en evidencia sustancial que obra en el expediente administrativo. La misma nos obliga a examinar las decisiones administrativas impugnadas con un prisma de gran consideración y respeto. A esta norma va unida una presunción de legalidad y corrección que debe respetarse mientras no se pruebe convincentemente que la agencia abusó de su discreción. Véase, Murphy Bernabé v. Tribunal Superior, 103 DPR 692, 699 (1975).
La norma general de contrato es que no existe un requisito de forma específico y sí de contenido. Sabido es que la validez de un contrato requiere que concurran tres elementos indispensables, a saber: el consentimiento de los causantes, objeto cierto que sea materia del contrato y la causa de la obligación establecida. El consentimiento se demuestra mediante el concurso de la oferta y la aceptación de la misma. Las partes pueden acordar todas las cláusulas que entiendan necesarias, siempre y cuando no sean contrarios a la ley, la moral y el orden público. Nuestro ordenamiento civil reconoce que los contratos quedan perfeccionados por el mero consentimiento y que las partes contratantes están obligadas a cumplir con las consecuencias de un contrato que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Véase, Trinidad García v. Chade, 2001 JTS 10; Quiñones López v. Manzano Pozas, 141 DPR 139, 154 (1996); Neca Mortgage Corp. v. A&W Dev., S.E., 137 DPR 860, 871 (1995).
En el caso que nos ocupa, los recurrentes plantean que en el contrato original, Contrato Opción de Compraventa y el Acuerdo, que firmó con Juan Ortiz Gómez, hubo una novación extintiva. La figura jurídica de la novación ha sido discutida jurisprudencialmente. La misma puede ser expresa o tácita. Véase, Teachers Annuity v. Sociedad, 115 DPR 277 (1984); Marina v. Brown, 114 DPR 64 (1983); Miranda Soto v. Mena Eró, 109 DPR 473 (1980); Warner Lambert v. Tribunal Superior, 101 DPR 378 (1973). Igualmente, el Código Civil expone que la novación se divide en dos clases: extintiva y modificativa. La extintiva conlleva la extinción de la obligación original y la creación de una nueva. Surge cuando las partes expresan su intención de novar en un contrato posterior, por lo que el contrato original queda extinguido en todas y cada una de las cláusulas que sean incompatibles con el contrato posterior. Por otro lado, está la modificativa, que surge cuando se sustituye la persona del deudor o hay una subrogación de terceros o existen condiciones variantes en el objeto o en los aspectos principales del contrato.
En el caso ante nos, el contrato original sufrió una novación modificativa. Ello debido a las modificaciones que surgen del Acuerdo. Los cambios no son incompatibles entre sí para producir la extinción del contrato original.
*780 III
Caribbean Realty sostiene que, contrario a lo resuelto por DACO, a partir del momento en que se otorgó el Acuerdo, no actuaba como urbanizadora, sino que sus funciones fueron en calidad de corredora de bienes raíces. No estamos de acuerdo.
El Artículo 2 de la Ley Núm. 130 del 13 de junio de 1967, conocida como “Ley de la Oficina del Oficial de Construcción adscrita a la Administración de Renovación Urbana y Vivienda”, supra, contempla la definición de lo que constituye un urbanizador o constructor, grupos o categorías, tomando como base sus actos. Incluye a los empresarios que se dediquen al negocio de construcción o principal responsable de efectuar una de las siguientes etapas: promover, diseñar y vender. La figura del promotor es una que forma parte del negocio de la construcción y la actividad se desarrolla con fines de lucro. Véase, Acevedo Hernández v. CRUV, 110 DPR 655 (1981). La misma interviene en las relaciones que se crean con el otorgamiento de un contrato de ejecución de obra y que generalmente se encarga de idear, promover y contratar con contratistas, ingenieros, arquitectos todo lo relativo a la construcción de casa o edificios para luego venderlos a terceras personas. Como regla general, no son dueños de los terrenos que son desarrollados.
De otra parte, el negocio de bienes raíces está regülado en nuestra jurisdicción por la Ley Núm. 10 de 26 de abril de 1994, conocida como la “Ley de Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico”. Si bien de su exposición de motivos surge que dicho estatuto fue legislado para agrupar todas las disposiciones de ley que en aquellos momentos se encontraban dispersas en varias disposiciones legales, las cuales, a su vez, habían sido aprobadas para intentar resolver los problemas de la práctica de dicho negocio, lo cierto es que la misma no apagó el clamor de que "se requiere una ley nueva que no solamente reglamente las licencias y la práctica, sino también las actividades mercantiles que los corredores llevan a cabo y que es donde ocurren mayores controversias". Véase, Felicita Pérez Rivera, Hacia la identificación del contrato de corretaje de bienes raíces dentro del ordenamiento jurídico puertorriqueño, 50 Rev.Col. Ab. P.R. 43, 83 (1989). Tales expresiones, aun cuando fueron vertidas antes de que se aprobara en 1994 el estatuto vigente antes referido, mantienen actualidad, toda vez que no se regula allí el contrato de corretaje de bienes raíces per se, su naturaleza, forma y especies. Así, la delimitación de sus contornos continúa siendo perfilada por la jurisprudencia de nuestro Tribunal Supremo.
El contrato de corretaje está actualmente definido en nuestro ordenamiento sustantivo por la Ley Núm. 10, supra. Dicha ley define el contrato de corretaje como aquél mediante el cual una persona, a cambio de una retribución, se obliga a prestarle servicios a otra como intermediario para llevar a cabo una transacción de bienes raíces con un tercero. Dispone también que la transacción de bienes raíces significará cualquier contrato, de compraventa, promesa de venta, opción de compra o venta, permuta, arrendamiento, subasta, administración de propiedades, o el ofrecimiento, promoción o negociación de los términos de una venta, opción de compraventa, promesa de compraventa, alquiler, subasta, administración, permuta de bienes raíces localizados en o fuera de Puerto Rico, donde sirva de intermediario un corredor, vendedor o empresa de bienes raíces.
Al respecto, se ha resuelto que mediante un contrato de corretaje un agente o corredor de bienes y raíces se obliga a gestionar clientes para la adquisición o transferencia de propiedades. Davis v. Daubón, 140 DPR 659 (1996) (citando a 4-II José Ramón Vélez Torres, Curso de Derecho Civil: Derecho de Contrato 420). En Colegio Internacional Sek de P. R., Inc. v. Escribá, 135 DPR 647 (1994), el Tribunal Supremo acogió la definición que del contrato de corretaje ofreciera el tratadista Puig Brutau, refiriéndose al mismo como “aquél por el cual uno se obliga a pagar a otro (el corredor) una remuneración (la comisión) por la información de la ocasión para concluir un contrato o por la mediación en un contrato. El corredor interviene para mediar entre dos personas a las que pondrá en relación para que contraten entre sí. El derecho a cobrar la comisión depende de la efectiva celebración de un contrato en el que el corredor no interviene como parte”. José Puig Brutau, Fundamentos de Derecho Civil, Ed. Bosch, 1982, Vol. 11-2, pág. 480. Véase, Colegio Internacional *781 Sek de P. R., Inc. v. Escribá, supra.
Nuestra legislación, al igual que el tratadista Puig Peña, reconoce dos consecuencias derivadas del contrato de corretaje, a saber: (1) de una parte, la intervención del corredor en el negocio jurídico es la del mediador que se limita a poner en relación directa o indirecta a los futuros contratantes, sin participar él personalmente en el contrato. El corredor no es representante de las partes y tampoco mandatario o comisionista de ninguno; es decir, queda siempre fuera del contrato resultante de su actividad. Mas bien se limita a buscar y aproximar a los interesados que pretenden realizar un negocio jurídico, ello de manera propicia y eficaz para lograr una coincidencia de voluntades. (2) De otra parte, el corredor lleva a cabo sus servicios a cambio de una comisión, por lo que es de la esencia de este contrato la existencia de un premio o retribución (la comisión). Puig Peña, Compendio de Derecho Civil Español 210 (Ed. Pirámide, 1976).
Complementando la legislación aplicable al contrato bajo estudio, le es de aplicación las disposiciones generales del Código Civil, en particular aquellas contenidas en el subtítulo 4 de dicho cuerpo jurídico, Artículo 1041 y siguientes, 31 L.P.R.A. §§ 2991 et seq., en cuanto a las obligaciones (Parte I), y Artículo 1206 y siguientes, 31 L.P.R.A. §§ 3371 etseq. en cuanto a los contratos en general (Parte II). Igualmente son aplicables al contrato de corretaje, las reglas de hermenéutica de los mandatos especiales que requieren una interpretación restrictiva de su contenido. Véase, Davis v. Baubón, supra.
Conforme a ello, ya desde Lamboy v. Irizarry, 73 D.P.R. 331, 333 (1952), en esta jurisdicción se resolvió que para que surja el derecho del corredor a cobrar la comisión pactada, sería necesario: (1) que la venta se hubiera realizado, con lo cual el contrato de compraventa hubiera quedado consumado; o (2) que el contrato de compraventa hubiera quedado perfeccionado aun sin llegarse a consumar la venta y el mismo se hubiera rescindido voluntariamente. De ordinario, el corredor y el vendedor acuerdan la compensación o comisión que se pagará por las gestiones realizadas. Cómo norma general, para que surja el derecho del corredor a la comisión acordada, será necesario que el contrato de compraventa previsto se haya perfeccionado. Véase, Davis v. Daubón, supra. Es decir, para que en cualquier caso o situación del tráfico jurídico un corredor pueda válidamente reclamar y obtener el cobro de un corretaje, bien sea directamente a la persona que contractualmente se obligó al pago o de quien alegadamente lo cobró indebidamente, es menester que como cuestión de derecho el corredor sea acreedor contractual a dicho corretaje.
Aplicando el estado de derecho antes expuesto a los hechos del caso ante nos, examinemos el reclamo de Caribbean Realty de que a partir del momento en que se otorgó el Acuerdo, sus funciones fueron en calidad de corredora de bienes raíces y no como urbanizadora.
Caribbean Realty participó en la confección de un proyecto residencial y cónsono con ello, efectuó actos que están enmarcados como los que ordinariamente realiza un urbanizador-promotor. Llevó a cabo varias gestiones administrativas conducentes a la obtención de los permisos requeridos por las diferentes agencias concernidas para la aprobación de la construcción. Además, confeccionaron la promoción del proyecto, y gestionaron el concepto urbanístico. Estos tuvieron la intención de adquirir dichos terrenos para desarrollarlos. Los mismos invirtieron en el proyecto pagando gastos que luego fueron cobrados en la ganancia neta. Sus actuaciones fueron de un promotor-constructor.
Caribbean Realty actuó más allá a las gestiones que realiza un Corredor de Bienes Raíces.
Los documentos parciales que somete Caribbean Realty no refutan el dictamen recurrido el cual se emite a la luz de la totalidad de los documentos y la credibilidad de la prueba que tuvo ante sí el Departamento de Asuntos del Consumidor.
Ausentes indicios de arbitrariedad o abuso de discreción, se deniega el auto solicitado.
*782 Notifíquese.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 23
1. La copia de la querella que somete la parte peticionaria en el Apéndice 16 del Recurso está incompleta.
2. Véase, nota acalce 3 y Apéndice 1 del Recurso de Revisión.
3. Artículo 1213 del Código Civil de Puerto Rico, 31 LPRA see. 3391.
4. Artículo 1214 del Código Civil de Puerto Rico, 31 LPRA see. 3401.
5. Artículo 1207 del Código Civil de Puerto Rico, 31 LPRA see. 3372.
6. Artículo 1210 del Código Civil de Puerto Rico, 31 LPRA see. 3375.
7. Artículo 1158, 31 LPRA see. 3242.
8. Artículo 1157, 31 LPRA see. 3241.
9. 17 LPRA see 502.
10. 17 LPRA sec 501ss.
11. 20 LPRA sec. 3025ss.
12. 20 L.P.R.A. § 3025(o).