GLORIA IRIS ACEVEDO HERNÁNDEZ y OTROS, demandantes y recurridos, *v.* MANUEL VIÑAS SORBÁ y JORGE LÓPEZ RAMÍREZ, demandados y recurrentes; ROMEX CONSTRUCTION, DÍAZ FORTUÑO & PIERLUISI, INC., ASOCIACIÓN DE MAESTROS DE PUERTO RICO y PEDRO A. MIRANDA, h/n/c PEDRO A. MIRANDA & ASSOCIATES, terceros demandados recurridos.

*Número:* R-80-126          *Resuelto:* 30 de octubre de 1981

634

*Angel L. Calero*, abogado de la recurrente; *José M. Cabrera Deetjen*, abogado de la recurrida Asociación de Maestros de Puerto Rico; *Luis A. Lugo* y *Angel Luis Mayol Arizmendi*, abogados de los recurridos (demandantes); *Rodolfo F. Aponte*, abogado del *amicus curiae* Asociación de Contratistas Generales de América, Capítulo de Puerto Rico.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Los demandados recurrentes ("el contratista") construyeron ciento cincuenta unidades de vivienda bajo contrato con la Asociación de Maestros ("la Asociación" o "la dueña vendedora"). Los planos y especificaciones fueron suplidos por la firma Pedro A. Miranda & Associates ("el arquitecto"), la cual fue contratada separadamente por la Asociación. El arquitecto tuvo a su cargo también la inspección de las obras.

La Asociación vendió las casas a los demandantes ("los dueños compradores"). Las casas sufrieron pronto, antes de expirar dos años de su venta, serias grietas y filtraciones. Los dueños compradores demandaron al contratista. El contratista interpuso demanda contra tercero contra el arquitecto, la Asociación y varios subcontratistas. El tribunal designó un perito para examinar la condición de las casas. Tras el juicio correspondiente, el tribunal condenó al contratista a satisfacer a los dueños compradores la suma total de $42,500.56, más intereses y $1,000 en concepto de honorarios de abogado. El tribunal ordenó a su vez que los subcontratistas resarcieran al contratista las referidas sumas. El tribunal declaró sin lugar la demanda contra la Asociación y tampoco le impuso responsabilidad al arquitecto.

Únicamente el contratista ha incoado recurso de revisión. Su posición es que la responsabilidad de los defectos recae en la Asociación y el arquitecto. Debemos en conse-

cuencia determinar si la dueña vendedora responde en esta situación como promotora, mandante del arquitecto o en otra capacidad; si el arquitecto es también o solamente responsable; y, de existir tal responsabilidad, cuál es su naturaleza y para con quién. No se ha impugnado la procedencia de la acción decenal en este pleito ni la corrección de la sentencia contra los subcontratistas.

1. *La Asociación de Maestros y la figura del promotor*

En *Acevedo Hernández* v. *C.R.U.V.*, 110 D.P.R. 655 (1981), mencionamos la nueva figura del promotor como legitimado pasivo en las acciones basadas en la responsabilidad decenal, pero por incumplirse allí el requisito de asumir el supuesto promotor la iniciativa de llevar a cabo la totalidad del proyecto no tuvimos ocasión de expresarnos en mayor detalle sobre el tema. En el caso de autos, la Asociación tomó indudablemente la iniciativa de realizar el proyecto, contrató al arquitecto, contrató al contratista y vendió las casas. ¿Es esto suficiente en este caso particular, para convertir a la dueña vendedora en una promotora? La contestación es que no.

La posible responsabilidad decenal del promotor ha sido reconocida en España, Francia y otros países. S. de 3 de octubre de 1979 (Esp.); Civ. 13 nov. 1967, D. 1968. 257 (Fr.). Cabanillas Sánchez ha intentado recoger en unas notas recientes los requisitos que deben satisfacerse para incluir la promoción inmobiliaria en la responsabilidad decenal. Cabanillas Sánchez, "Ejecución Defectuosa de la Obra Inmobiliaria—Responsabilidad del Promotor . . .", 33 Anuario de Derecho Civ. 194 (1980). Cabanillas Sánchez considera que son tres los rasgos distintivos del promotor: 1°) El promotor es un profesional de la construcción; 2°) el promotor concibe y organiza la construcción de la obra, esto es, usualmente determina lo que desea hacer, adquiere el terreno, contrata los profesionales que han de encargarse del diseño y ejecución de la obra, se ocupa de las gestiones para financiar la obra y desempeña otras funcio-

nes administrativas; y 3°) el promotor organiza la construcción para que otros la adquieran, arrienden o gocen de otro derecho real sobre la misma. Cabanillas Sánchez, *op. cit.*, págs. 218-219. R. Saint-Alary propone una definición parecida. R. Saint-Alary, *Droit de la Construction*, Presses Universitaires de France, Paris, 1977, pág. 303.

■ No se nos ha demostrado que la Asociación de Maestros es un profesional de la construcción. Por este requisito no ha de entenderse que el promotor tenga que ser un contratista, pero sí que se dedique usualmente al negocio de urbanizar o hacer construir para otros, generalmente en plan de actividad comercial. La Asociación es una entidad sin fines de lucro. No surge de autos indicación alguna de que su propósito sea otro que intentar satisfacer primordialmente las necesidades de sus socios, sin intención de convertirse en un profesional de la construcción. No puede imponerse responsabilidad a la Asociación en calidad de promotor.

*2. Otras posibles bases de responsabilidad de la Asociación*

■ La Asociación tampoco responde como contratista. No construyó ni asumió responsabilidad contractual por la construcción. Tan solo escogió al contratista, que en este caso no es un *alter ego* de la Asociación. La Asociación sí responde como vendedora de las casas, pero el plazo para el saneamiento de vicios ocultos está prescrito en tal caso. Tampoco¹ hay base en el récord, y de haberla habido estaría prescrita, para imputarle responsabilidad delictual a la dueña vendedora. Tampoco se ha alegado en este caso la intromisión culposa del dueño en el diseño o construcción de la obra. *Encyclopédie Dalloz*, "Contrat d'Enterprise", suplemento de 1981, pars. 313 y ss.; G. Liet-Veaux, *Le Droit de la Construction*, 5ta ed., París, Ed. Celse, 1978, págs. 354-355.

*3. La relación entre la dueña vendedora y el arquitecto*

■ El contratista alega que la dueña vendedora le

responde por las supuestas faltas del arquitecto. No tiene razón. El contrato que vincula al arquitecto con el propietario es el de obra, no el de mandato. El arquitecto no es el mandatario del dueño; el dueño no es garante para con el contratista de la excelencia profesional que el arquitecto despliegue en el desempeño de sus obligaciones. El dueño no responde al contratista de la falta del arquitecto. Mazeaud y Mazeaud, *Traité Théorique et Pratique de la Responsabilité Civile*, 6ta ed. (por A. Tunc), París, Ed. Monthchrestien, 1970, T. II, págs. 73–77.

El tribunal de instancia no cometió error, en consecuencia, al desestimar la demanda de tercero contra la Asociación.

4. *La relación entre el contratista y el arquitecto*

El récord de este caso revela que se cometieron errores de diseño por el arquitecto. No puede precisarse en qué medida los vicios de construcción pueden atribuirse a tales errores. También se desconoce el punto en que el contratista pudo descubrir estos errores. Esto exige que discutamos la relación entre arquitecto y contratista en tal género de situación y la naturaleza de su responsabilidad frente al dueño y sus causahabientes. Véase el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124.

En el régimen de la responsabilidad decenal existe una presunción rebatible de culpa por parte de todo interventor en el diseño y construcción de la obra. Mazeaud y Mazeaud, *op. cit.*, T. II, pág. 117 y ss. Cuando tanto el contratista como el arquitecto han contribuido al vicio decenal, cuando las causas del vicio se entremezclan hasta formar un todo indivisible, cada profesional es responsable por el todo; el contratista y el arquitecto son responsables *in solidum*. La diferenciación entre las causas no debe pesar sobre el perjudicado. La carga de la prueba corresponde a los presuntos deudores. De existir alguna indicación de posible concausalidad y consiguiente impedimento o inconveniencia en la asignación de las cul-

pas debe asegurarse al dueño y sus causahabientes la reparación íntegra del daño a través de la responsabilidad *in solidum*, con debida oportunidad al contratista y al arquitecto para que disputen entre sí la porción de los daños que les corresponde asumir. Mazeaud y Mazeaud, *op. cit.*, T. II, pág. 119 y ss.; J. Cadarso Palau, *La Responsabilidad Decenal de Arquitectos y Constructores*, Madrid, Ed. Montecorvo, 1976, págs. 293–314. Si las faltas del arquitecto pueden determinarse por un contratista avisado, su deber es informar al dueño y no construir. Su deber es no proceder con la obra y solicitar luego que el arquitecto contribuya a los daños. De no ser tal el caso, el contratista tiene derecho a repetir contra el arquitecto. Mazeaud y Mazeaud, *op. cit.*, T. II, pág. 73.

El tribunal de instancia erró al no determinar el grado, si alguno, al que el arquitecto le responde al contratista en este caso. El contratista no tiene causa de acción contra el dueño, pero puede tenerla contra el arquitecto, a quien se incluyó en la demanda contra tercero.

*Se confirmará la sentencia dictada, excepto que se devolverá el caso a instancia para la determinación de la responsabilidad del arquitecto para con el contratista.*

El Juez Asociado Señor Negrón García no interviene.