LUIS A. GONZÁLEZ CAMACHO ET AL., demandantes y peticionarios, *v.* JOSÉ R. SANTOS CRUZ ET AL., demandados y recurridos.

*Número:* CE-89-13     *Resuelto:* 28 de junio de 1989

*Félix A. Ramos Cabán*, abogado de los peticionarios; *Jaime Rodríguez Rivera*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Mediante trámite para mostrar causa, revisamos la sentencia parcial del Tribunal Superior, Sala de Humacao, que

desestimó la demanda de 22 de junio de 1988, promovida por los esposos Luis A. González Camacho y María M. Fiol contra José R. Santos Cruz y su esposa Andrea Vázquez.

Los demandantes alegaron haber adquirido de los esposos Santos-Vázquez —el 22 de junio de 1987— un inmueble en Humacao. Adujeron que Santos Cruz, por sí y a través de los demás codemandados, los contratistas y subcontratistas José Gómez y Santos Beltrán, habían realizado una ampliación de hormigón y acero durante 1979. Expusieron que la construcción adolecía de serios vicios que amenazaban su ruina, porque las vigas de acero utilizadas para apoyar el techo resultaron insuficientes para mantener el peso, lo que generó una depresión de doce (12) pulgadas de profundidad. Expresaron que los vendedores Santos-Vázquez conocían el defecto; que lo ocultaron al rellenar la depresión con cemento y al utilizar un plafón acústico; que aún así lo vendieron; que ellos —los compradores— no conocían ese vicio hasta el momento en que realizaron unas obras de decoración, y que para evitar su desplome instalaron provisionalmente unas columnas de acero que costaron $10,000. Alegaron que la reparación de las columnas permanentes conlleva gastos ascendentes a $35,000. Invocaron la responsabilidad de los esposos Santos-Vázquez bajo la tesis de que ambos fueron los dueños de la obra y que Santos Cruz actuó como su director. Reclamaron, además, compensación por daños mentales.

Santos Cruz, por sí y a nombre de la sociedad Santos-Vázquez, solicitó la desestimación de la demanda fundamentándose en que él no fue el contratista ni el arquitecto de la obra —solamente su dueño— y que la acción en su contra había prescrito. El tribunal de instancia desestimó.

## II

■ Al examinar la juridicidad de dicho dictamen, y en vista de que se trata de una moción de desestimación, exami-

namos las alegaciones de la demanda de la manera más favorable a los demandantes peticionarios. *Candal v. CT Radiology Office, Inc.*, 112 D.P.R. 227, 230–231 (1982); *Moa v. E.L.A.*, 100 D.P.R. 573, 586 (1972); *Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305 (1970); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1987, Vol. II, Cap. III, págs. 63–64. En esencia, y según enmendada, en la moción se alega afirmativamente que Santos Cruz fue director de la obra y no simplemente un vendedor, esto es, que por sí y bajo su dirección y control directo se construyó la ampliación mencionada.[1]

En este sentido es incorrecta la proposición de Santos Cruz en cuanto a que "[e]n ninguna de las alegaciones de la parte demandante se ha establecido que el c[od]emandado José R. Santos Cruz sea el contratista del edificio ni el arquitecto que dirigió la obra . . .". Apéndice V, pág. 22. Ese aserto crea una distinción tajante entre el dueño y el contratista de la obra, que descarta a priori la posibilidad real de que el dueño sea, a su vez, el encargado de la construcción; esto es, que coincidan en una misma persona ambas figuras. Lo rechazamos.

Aclarado este extremo, no obstante, advertimos que el tribunal de instancia interpretó la moción de desestimación como una moción de sentencia sumaria. A tal efecto hizo determinaciones de hecho en los extremos en que a su entender no existía controversia. Luego discutió si era aplicable o no

---

[1] De la demanda enmendada surge la alegación de que Santos Cruz, *"por sí, como dueño y director de la obra* y a través de los codemandados Santos Beltrán y José Gómez; *actuando éstos como contratistas o sub-contratistas . . .* construyó una ampliación en hormigón y acero . . .". Apéndice II, pág. 15. De esas alegaciones surgen ambas alternativas, esto es, que el dueño no se limitó a sus prerrogativas de dueño, sino que actuó como "director de la obra". Íd. Concebimos este término como sinónimo de "contratista" y, por ende, los otros demandados actuaron como sus contratistas o *subcontratistas*. De las restantes alegaciones surge que tanto Santos como Gómez "no corrigieron", sino que se "limitaron a rellenar . . . la parte superior". Íd., pág. 16.

el Art. 1375 del Código Civil, 31 L.P.R.A. sec. 3843, sobre la obligación de saneamiento por vicios ocultos de todo vendedor. Determinó que esa acción prescribió por haber transcurrido el término de seis (6) meses desde la entrega de la propiedad. Seguidamente analizó la posibilidad de que el "dueño-vendedor" respondiera bajo el supuesto de haber actuado como contratista del inmueble vendido. Sobre el particular concluyó que "[p]ara que se considere a un dueño-vendedor como contratista se requiere, no sólo que [é]ste intervenga directa o indirectamente en la construcción del mueble, *sino que el objetivo en su construcción sea la venta a [un] tercero*". (Énfasis nuestro.) Apéndice XV, pág. 48.

## III

El Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, en lo pertinente a la controversia, expone:

> El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

En *Acevedo Hernández v. Viñas Sorbá*, 111 D.P.R. 633, 637 (1981), resolvimos que la Asociación de Maestros —quien vendió unas ciento cincuenta (150) unidades de vivienda a los allí demandantes— no respondía como *promotor*, pues para ello resultaba necesario que fuese un "profesional de la construcción . . . que se dedique usualmente al negocio de urbanizar o hacer construir para otros . . .". Sin embargo, al evaluar *otros* posibles fundamentos de responsabilidad, examinamos si la Asociación de Maestros podía responder como contratista. Rechazamos esa posibilidad bajo la hipótesis —allí presente— de que ella "[n]o construyó ni asumió responsabilidad contractual por la construcción" (íd.) *y tampoco se había alegado "la intromisión cul-*

*posa del dueño en el diseño o construcción de la obra*". (Énfasis suplido.) Íd.

■ Finalmente dijimos que "[e]n el régimen de la responsabilidad decenal existe una presunción rebatible de culpa por parte de *todo interventor* en el diseño y construcción de la obra". (Énfasis suplido.) *Acevedo Hernández v. Viñas Sorbá*, supra, pág. 638.

En el caso de autos, los demandantes alegaron que Santos Cruz, como dueño, *intervino* de tal manera en la construcción que se convirtió de facto en su *constructor.* Por otro lado, en *Acevedo Hernández v. C.R.U.V.*, 110 D.P.R. 655, 660 (1981), ya habíamos expuesto que "[n]o existe disputa entre las partes sobre el hecho de que CRUV responde como vendedora . . . . La controversia versa, en parte, sobre si CRUV es también contratista". Con el fin de poder contestar adecuadamente esa interrogante fue necesario que devolviéramos el caso al tribunal de instancia para que dilucidara si al efectuar unas reparaciones esa entidad "se convirtió en contratista". Íd. De estos pronunciamientos se colige, implícitamente, que en determinadas circunstancias a un dueño puede considerársele contratista a los fines de estar sujeto a la responsabilidad decenal.

## IV

■ Según este enfoque doctrinario, la responsabilidad final del binomio dueño-contratista dependerá de las peculiaridades de su intervención, la naturaleza de la construcción y su conocimiento de que la obra adolecía de graves defectos. *Acevedo Hernández v. C.R.U.V.*, supra, pág. 662. De rigor es notar que esa responsabilidad está sujeta al propósito de venta inmediata de la construcción.

Al respecto, Juan Cadarzo Palau discute la Sentencia Núm. 182 de 27 de octubre de 1974 del Tribunal Supremo de España, ilustrativa de lo siguiente:

". . . la situación *del dueño del terreno que se convierte en su propio constructor o contratista* y concierta contratos separados con los diferentes gremios que han de intervenir en la construcción, *para vender seguidamente de concluida la obra* —e, incluso, a la vista del plano— los locales y viviendas que la integran; no podrá alegar que como no ha celebrado un contrato de obra con un único empresario, *ya no puede hablarse de contratista responsable, pues ello equivaldría a permitir un fraude de ley*, porque, en supuestos tales, aquel primitivo propietario del terreno, que construye indirectamente por medio de los múltiples gremios que él coordina, *asume, en realidad, la cualidad de contratista, con las obligaciones y responsabilidades que a éste le impone el mencionado precepto, frente a quienes por compra posterior adquirieren de él toda o parte de la obra construida*, y *no* queda *exonerado* de ellas por tal *enajenación*, ya que, *con semejante tesis y la argumentación de que el comprador no tenía contra él más acción que la de saneamiento por vicios ocultos del artículo 1.490 del Código Civil, resultaría que se habrían extinguido las responsabilidades que determinadamente establece el referido artículo 1.591 para el constructor o contratista* y el arquitecto, *con tal de que la ruina de la obra se manifestase después de los seis meses* siguientes a la compraventa, aunque *no hubieren transcurrido diez años desde la conclusión de la obra*". Por último, y recordando la doctrina sentada por la sentencia de 5 de mayo de 1961 en orden a la transmisión de la acción de responsabilidad decenal a los subadquirentes, agrega el 5.º considerando que, "háyase realizado la obra por medio de un contratista único que haya pactado con el propietario del terreno o háyase ejecutado por éste mediante contratos separados con los distintos gremios que intervienen en la construcción, *los adquirentes de los pisos y locales del edificio tienen a su favor las acciones de resarcimiento que específicamente señala el artículo 1.591 del Código Civil, bien contra el contratista único —si ha existido—, o bien contra el propio dueño del edificio que realizó su construcción coordinando los diferentes gremios que en ella intervinieren*". J. Cadarzo Palau, *La responsabilidad decenal de arquitectos y constructores*, Madrid, Ed. Montecorvo, 1976, págs. 243–244.

■ En lo esencial coincidimos con esa línea de pensamiento. Por analogía conceptual y fáctica no podemos ignorar el hecho de que si el dueño actuó como contratista, *con el objeto de una venta inmediata*, debe estar sujeto a la responsabilidad decenal. Bajo este prisma, es válida la dicotomía del tribunal de instancia de que esa responsabilidad —bajo la figura *dueño constructor-vendedor*— depende de si tenía la intención de vender prontamente cuando construyó.

■ Nuestro Código Civil se orienta hacia la protección del comprador, que de otro modo podría verse privado de resarcimiento luego de transcurrido el corto período de seis (6) meses para el saneamiento. La interpretación más justiciera, compatible con el interés público que late en nuestra legislación, es que de probarse que los hechos conforman la llamada figura del *dueño constructor-vendedor*, puede imponerse responsabilidad decenal si se demuestra la intención o se realiza una venta inmediata. De este modo armonizamos nuestra doctrina jurisprudencial con *Acevedo Hernández v. C.R.U.V.*, supra.

V

En el caso de autos, confrontada la determinación de que Santos Cruz construyó en *1979* con la realidad de que la venta a los esposos González-Fiol se realizó en 1987, esto es, ocho (8) años después, queda derrotada la causa de acción contra Santos Cruz bajo el supuesto de *dueño constructor-vendedor.*

Por los fundamentos expuestos, *se dictará sentencia mediante la cual se expida el auto y se confirme la sentencia parcial del tribunal de instancia. Continuarán los procedimientos contra los restantes demandados.*

El Juez Asociado Señor Hernández Denton no intervino.