Colón Birriel, Juez Ponente
*875 TEXTO COMPLETO DE LA RESOLUCION
I
En el recurso instado la recurrente Hill Construction Corp. ("Hill Construction") interesa la revocación de una resolución emitida por el Departamento de Asuntos del Consumidor ("DA.C.O. ”), el 9 de mayo de 1996, la que reiteró su resolución previa de 22 de mayo de 1996. Mediante dicho dictamen D.A.C.O. le concedió un remedio adicional al reclamado por la recurrida Gloria Escribano Concepción ("Escribano"), imponiéndole a Hill Construction, responsabilidad por vicios de construcción a tenor con lo establecido en el Art. 1483 del Código Civil, 31 LPRA see. 4124.
El D.A.C.O. desestimó la querella en cuanto a los diseñadores del proyecto de Urbanización San Pedro Estates, Montilla & Látimer, así también en cuanto a los diseñadores estructurales López & Grillasca y en cuanto a la realizadora del estudio del suelo, Geotec, por no tener responsabilidad alguna por los alegados vicios de construcción existentes en la residencia de Escribano.
Por otro lado, a tenor con la responsabilidad que se le impuso a Hill Construction por los vicios de construcción, D.A.C.O le ordenó pagarle a Escribano dentro del término de veinte (20) días la suma de $115,000.00, desglosados en $50,000.00 pagados por Escribano como pronto pago por su residencia, $65,000.00 pagados por la hipoteca hasta la fecha de la resolución, más $15,000.00 en concepto de daños y perjuicios. Le ordenó a Escribano transferir el título de su residencia a Hill Construction, con la obligación de ésta de relevar a Escribano de la obligación hipotecaria que gravaba la propiedad.
Se le apercibió a Hill Construction que el incumplimiento con lo ordenado en la resolución, conllevaría el pago de los intereses aplicables, la imposición de una multa administrativa de $10,000.00 y se tomarían las acciones legales necesarias para su cobro. Por último, le advirtió que el haber pagado la multa no la relevaría de lo ordenado.
Insatisfecho con lo ordenado, Hill Construction presentó oportunamente reconsideración. Por su parte, Escribano también presentó la suya, solicitando se le fijara responsabilidad solidaria a todos los querellados, entiéndase, P.A. Developers (Pablo Abich), Hill Construction, Montilla & Látimer, López & Grillasca y Geotec. Por último solicitó se corrigiera la cantidad correspondiente del pago de la hipoteca.
Posteriormente, el D.A.C.O. emitió resolución en reconsideración el 6 de mayo de 1996, mediante la cual declaró sin lugar la solicitud de reconsideración de Hill Construction. En cuanto a la solicitud de Escribano la declaró ha lugar, en cuanto a modificar la suma concedida por las mensualidades *876 pagadas de $65,000.00 a $92,545.00.
Hemos examinado el recurso a la luz de la totalidad de los hechos, de los escritos ante nos y el derecho aplicable. Por los fundamentos que expondremos más adelante, procedemos a modificar la resolución recurrida. Veamos.
II
Escribano y su esposo, Vicente Rodríguez Nieves, dueños de la residencia localizada en el lote A-9 de la Urbanización San Pedro Estates, en Caguas, Puerto Rico, presentaron originalmente una querella ante D.A.C.O. contra P.A. Developers y Hill Construction, alegando que su propiedad estaba en peligro de convertirse en una ruina debido a fallas en su construcción. Luego, la querella fue enmendada para incluir a Montilla & Látimer, a López & Grillasca y a Geotec.
D.A.C.O. procedió a realizar una inspección ocular de los alegados defectos de construcción y, posteriormente, llevó a cabo una vista evidenciaria. Previo al desfile de prueba, las partes estipularon los siguientes hechos:

"a) Que Hill Construction Corp. fue la constructora de la parte estructural de la residencia de la parte querellante.

b) Que Hill Construction Corp. construyó de acuerdo con los planos que se le suplieron.

c) Que la construcción de Hill Construction no tiene vicios, en cuanto a la construcción per se, ya que los defectos estructurales obedecen a vicios en el suelo.

d) Que Geotec, a través del Ingeniero Ortiz, fue la firma que realizó el estudio de suelo para el proyecto de Urb. San Pedro Estates, sin que se le contratara para efectuar labores de supervisión durante el movimiento de tierra.

e) Que las recomendaciones dadas por Geotec en su estudio de suelo para el movimiento de tierra no fueron seguidas.

f) Que el movimiento de tierra fue realizado por P.A. Developers sin la intervención de las otras querelladas.

g)Que Montilla & Látimer fueron los que hicieron los planos arquitectónicos de las casas modelos de la Urb. San Pedro Estates.

h) Que Montilla & Látimer no intervinieron en la ubicación de las casas en el proyecto San Pedro Estates.

i) Que Montilla & Látimer no intervinieron en la supervisión de la obra ni de la construcción de las casas de la Urb. San Pedro Estates.

j) Que Montilla & Látimer no intervinieron en nada que esté del nivel de la zapata hacia abajo en la construcción de dichas casas.

k) Que López & Grillasca fueron los que prepararon los planos estructurales de las casas de la Urb. San Pedro Estates.

l) Que López & Grillasca no intervinieron en los planos del proyecto de la Urb. San Pedro Estates ni intervinieron en la ubicación de las casas en los solares.

m) Que López & Grillasca no intervinieron en la adición que hizo la querellante a su casa.

n) Que López & Grillasca no intervinieron en la supervisión de la construcción de las casas ni en el desarrollo de la Urbanización.

*877
o) Que López & Grillasca no intervinieron en nada que esté del nivel del piso de las casas hacia abajo en dicho proyecto". 

Además de estas estipulaciones, a través de la prueba desfilada y no controvertida, el Oficial Examinador de D.A.C.O. encontró probados los siguientes hechos:

"a) La querellante, Gloria Escribano Concepción y su esposo, Vicente Rodríguez Nieves, adquirieron la propiedad objeto de esta querella, ubicada en el lote A-9 de la Urb. San Pedro Estates, de Fernando Velázquez y Sara María Pérez, mediante escritura de compraventa, otorgada el 18 de julio de 1990, por el precio de $190,000.00. La parte querellante dio un pago inicial de $50,000.00 y en estos cuatro años ha efectuado pagos por la hipoteca de alrededor de $65,000.00.

b)Dicha propiedad fue vendida originalmente por P.A. Developers a los esposos Benedic-Linderman en diciembre de 1988, siendo la parte querellante los terceros adquirentes.

c) Que la terraza existente en la parte de atrás de la casa, fue ampliada por la parte querellante, algunos 5 ó 6 pies, le puso paredes de bloque y ventanas, poniéndole terrazo en el piso. Esta construcción se realizó como al mes de la querellante haber adquirido la casa.

d) Que alrededor de tres meses después de haber adquirido dicha propiedad, la parte querellante empezó a notar en un día de lluvia, filtraciones en el techo de su cuarto, el "master room", empezando a notar en el plafón, la existencia de grietas.

e) Que posteriormente, los bloques de cristal que componían la parte exterior del baño del cuarto principal, empezaron a despegarse hasta que algún tiempo después se cayó la pared. La querellante se vio obligada a tapar el hueco con paneles, dejar de utilizar ese baño y poner un portón de rejas, en la puerta de dicho baño.

f) Que las grietas que comenzaron en el cuarto empezaron a notarse en otras áreas de la casa, principalmente desde el centro de la casa hacia atrás.

g)Que la querellante se quejó con Hill Construction Corp., del problema de las grietas y filtraciones en el techo de su residencia. Estos entendieron la reclamación y sellaron algunas grietas en el techo. Esto lo hizo en un par de ocasiones.

h) Que luego de la intervención de Hill Construction Corp., las filtraciones volvieron a surgir y volvieron a notarse la grietas, en el plafón de la casa.

i) La querellante radicó querella originalmente contra P.A. Developers y Hill Construction Corp. Posteriormente dicha querella fue enmendada, para incluir los arquitectos, Montilla & Látimer, a los ingenieros López y Grillasca y a la firma de Geotec Corp., que se dedica al estudio de suelos.

j) La propiedad fue inspeccionada por un técnico del Departamento quien corroboró los defectos alegados por la parte querellante.

k) El Ing. Luis Sierra realizó un estudio de suelo en el solar donde ubica la residencia de la parte querellante, encontrando que la deformación que está sufriendo la residencia, se debe a vicios en el suelo. Estos vicios consisten de una compactación inadecuada del terreno, (no se siguió lo recomendado por el estudio de suelo) lo que ha ocasionado un hundimiento del mismo, superior a las seis pulgadas, además de un movimiento del terreno, provocado por la inestabilidad de un talud existente detrás de la casa. Según su opinión pericial, la situación de la propiedad y el estado de deformación en que se encuentra, seguirá en progreso (aumentando el deterioro).

l) Que el Ingeniero estructural, José A. López, de López & Grillasca, indicó que la situación en que se encuentra la propiedad causará el que la parte querellante esté efectuando reparaciones todo el tiempo, ya que todo lo que se repare, volverá a afectarse al seguir cediendo el terreno.

m) Esta situación ha ocasionado serios daños y angustias mentales a la parte querellante, por la *878 inseguridad que representa para ella, el estado en que se encuentra su propiedad." 
Después de analizar las determinaciones de hechos, D.A.C.O. concluyó que los daños causados en la propiedad de Escribano obedecían a vicios en el suelo. El Oficial Examinador, aplicando el artículo 1483, supra, sobre responsabilidad decenal, desestimó la querella en cuanto a Montilla & Látimer, López & Grillasca y Geotec incluidos en la querella enmendada y ordenó a Hill Construction indemnizar a Escribano en la forma que hemos mencionado.
Oportunamente, como también hemos mencionado, Hill Construction solicitó la reconsideración de la resolución y, además, que se le admitiera prueba documental conseguida posterior a la vista. Por su parte, Escribano solicitó reconsideración cuestionando la determinación de D.A.C.O. de excluir a los otros querellados y para que se enmendara el remedio a los fines de actualizarlo, ya que la parte querellante aún estaba y está pagando la hipoteca. La moción de reconsideración de Escribano no le fue notificada a Hill Construction, razón por la cual ésta solicitó al D.A.C.O. que ordenara su notificación y les concediera quince (15) días para contestar.
D.A.C.O. declaró no ha lugar la reconsideración instada por Hill Construction, rechazando la evidencia que ésta ofreciera con posterioridad a la vista. No ordenó la notificación del escrito de reconsideración presentado por Escribano a Hill Construction. En cambio, acogió dicha reconsideración y la declaró con lugar, resolviendo que la suma concedida por concepto de las mensualidades pagadas por Escribano debe ascender a $92,545.00, en lugár de $65,000.00. Es decir, actualizó las mensualidades para conformarlas con los pagos que había efectuado Escribano hasta el momento. Determinó que cualquier otra mensualidad que hubiese pagado, ésta posterior al 1ro. de mayo de 1996, hasta el cumplimiento de la orden, tenía que pagársele.
Inconforme con la resolución, Hill Construction acude ante nos mediante el recurso de revisión que nos ocupa, imputándole al D.A.C.O. los siguientes errores:

"Primer Error: Erró el Honorable Juez Administrativo al hacer determinaciones carecientes [sic] [carentes] de base sustancial en el récord.

(A) Erró el Honorable Juez Administrativo al no concluir que de las determinaciones de hechos surge claramente que Hill, la subcontratista, no es responsable por los vicios de suelo en este caso y, por lo tanto, no le aplica la presunción rebatible que el artículo 1483 del Código Civil aplica a los contratistas.

(B) Erró el Honorable Juez Administrativo al concluir que HUI sabía o debía de haber sabido del defecto o vicio en el suelo del lote A-9 sobre el cual P.A. Developers le solicitó hiciera su trabajo.

Segundo Error: Erró el Honorable Juez Administrativo en la apreciación de la prueba al inferir —sin base— del informe del Ingeniero Emiliano H. Ruiz que HUI comenzó su fase de construcción antes de la preparación del terreno para comenzar a construir.

Tercer Error: Erró el Honorable Juez Administrativo al concluir que HUI había asumido la responsabilidad por los daños de la querellante por el hecho de que en alguna ocasión, de buena fe, accediera a repararle grietas en la estructura de la querellante.

Cuarto Error: Erró el Honorable Juez Administrativo en su apreciación de la prueba pericial al darle crédito a conjeturas del perito de los demandantes que no estaban apoyadas en la prueba que tuvo el perito ante sí, según surge del propio informe que obra en autos.

Quinto Error: Erró el Honorable Juez Administrativo al no admitir en evidencia documentos sometidos por ARPE que eran altamente relevantes a la reconsideración que había acogido.

Sexto Error: Erró el Honorable Juez Administrativo al no atender la solicitud de la recurrente para que se le notificara la moción de reconsideración de la querellante y proceder a rendir una orden final sin dar oportunidad a la recurrente HUI de ser oída."

*879 m
Conforme a nuestro ordenamiento jurídico, la función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es una de carácter limitado. Estas merecen gran deferencia de los tribunales si las mismas están sostenidas por evidencia sustancial. Sección 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2175, según enmendada; Metropolitana, S.E. v. A.R.P.E., _ D.P.R. _ (1995), 95 J.T.S. 39, pág. 767. Esta norma descansa en el hecho de que las agencias administrativas cuentan con experiencia y conocimientos altamente especializados sobre asuntos que se encuentran dentro del ámbito de sus parámetros creados por su ley orgánica. Facultad para las Ciencias Sociales v. C.E.S., 134 D.P.R. _ (1993), 93 J.T.S. 88, pág. 10783. Nuestro Tribunal Supremo ha enfatizado que "las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción". Fuertes v. A.R.P.E., 134 D.P R. _ (1993), 93 J.T.S. 165, pág. 11385. Por esto, los tribunales deben ser cautelosos al intervenir con dichas determinaciones administrativas, y deben limitarse a determinar si la agencia obró arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Fuertes v. A.R.P.E., supra, pág. 11383.
Nuestro Tribunal Supremo ha establecido que "la función judicial se cumple cuando se encuentra una base racional para las conclusiones de la agencia administrativa, sin que deba llegarse en dicha función a sustituir el criterio del tribunal por el de la agencia administrativa cuya actuación se intenta revisar”. Ledesma, Admor. v. Tribunal Distrito, 73 D.P.R. 396 (1952). Es decir, los tribunales deben indagar sobre la razonabilidad de la decisión administrativa y no deben sustituir el criterio de dicho organismo por el suyo propio a menos que se infrinjan directamente valores constitucionales fundamentales o que la actuación administrativa sea totalmente arbitraria. Facultad Para las Ciencias Sociales v. C.E.S., supra, pág. 10783. Además, existe una presunción de legalidad y corrección a favor de las decisiones administrativas. A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989). Dispone la see. 4.5 de la Ley de Procedimiento Administrativo Uniforme, supra, que:

"El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."

Por esta razón recae el peso de probar que la misma fue arbitraria, irrazonable o que se tomó en ausencia de evidencia sustancial, al que la impugna o se afecta por la decisión. Henríquez v. C.E.S., 120 D.P.R. 194, 210 (1987). El Tribunal Supremo ha resuelto que para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada, incluyendo aquella que sea contraria al punto de vista de la agencia y hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. Metropolitana S.E. v. A.R.P.E., supra; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 686 (1953).
En cuanto a las conclusiones de derecho, la mencionada See. 4.5 de la L.P.A.U., supra, sostiene que éstas "...serán revisables en todos sus aspectos por el Tribunal". O sea, los tribunales están en igual posición que el organismo administrativo para la adjudicación del mismo. Sin embargo, los tribunales no están autorizados a intervenir con las determinaciones de la agencia en ausencia de una demostración de que son irrazonables o arbitrarias. Debien v. Junta de Contabilidad, 76 D.P.R. 96 (1954).
*880 IV
Aclarado el alcance de nuestra función revisora nos compete resolver en primera instancia, si Hill Construction es un contratista o un subcontratista sujeto a la responsabilidad decenal que impone el Artículo 1483, supra.
Dicho artículo dispone que:

"El contratista de un edificio que se arruinase por vicios de la construcción responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción, igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince (15) años."

Este artículo "gobierna toda reclamación por alegados vicios de construcción que ocasionen la ruina de un edificio”, y establece una causa de acción contra los contratistas y arquitectos que participen en la construcción de un edificio. Zayas v. Levitt & Sons of P.R., _ D.P.R. _ (1992), 92 J.T.S. 164, pág. 10156. El plazo de caducidad de diez (10) años establecido en dicho artículo comprende el término tanto para que surjan los vicios como para instar la acción en los tribunales. Rivera v. Las Vegas Dev. Co., 107 D.P.R. 384 (1978). Esta disposición crea una presunción juris tantum de culpa por parte de los constructores y arquitectos cuando ocurre la ruina de un edificio por vicios de construcción o de suelo. Rosselló Cruz v. García, 116 D.P.R. 511 (1985).
Para librarse de responsabilidad el contratista, si se trata de vicios de la construcción, o el arquitecto, si se trata de vicios de suelo, tiene que probar mediante preponderancia de la prueba que la ruina no se debe a su intervención, sino que se trata de un caso de fuerza mayor, imprevisible e inevitable en los conocimientos y medios técnicos de la profesión. Rosselló Cruz v. García, supra.
Aunque el Código Civil habla sólo de los contratistas y arquitectos, nuestro Tribunal Supremo ha resuelto que los subcontratistas están igualmente sujetos a la responsabilidad decenal en lo que respecta a la parte que realizan. Carreras v. González Santos, 111 D.P.R. 819 (1981). En el caso Acevedo Hernández v. Viñas Sorbá, 111 D.P.R. 633 (1981), el Tribunal Supremo extendió esta responsabilidad a promotores. Asimismo, ha dicho que en el régimen de la responsabilidad decenal existe una presunción rebatible de culpa por parte de todo interventor en el diseño y construcción de la obra. (Enfasis suplido). González Camacho v. Santos Cruz, 124 D.P.R. 396 (1989). No obstante, los suplidores de materiales y los obreros no responden bajo la responsabilidad decenal que impone el artículo 1483 del Código Civil. Carreras v. González Santos, supra, pág. 822.
Existen otros supuestos en los cuales cabe la posibilidad de que el constructor responda por vicios que pertenecen a la esfera de responsabilidad del arquitecto, por ejemplo "...cuando el constructor _ conocía de los vicios del suelo y no se lo manifestó al arquitecto; seguir construyendo cuando le constaba que el arquitecto no los había subsanado, o cuando se trata de vicios del suelo porque entran dentro de lo exigible a cualquier profesional de la construcción". Corp. of the Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986).
De las determinaciones de hechos que realizara D.A.C.O. surge que las partes estipularon que "HUI Construction Corp. fue la constructora de la parte estructural de la residencia de la parte querellante". Dispone el artículo 1434 del Código Civil, 31 L.P.R.A. sec. 4013, que:

"[e]n el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto".

Estamos ante la situación de si la relación entre el contratista y el dueño de la obra se da en virtud de un contrato de obra. Un contrato de obra es aquel en el cual "una parte, generalmente denominada contratista se compromete a realizar y entregar una obra o construcción según la misma fue contratada mientras que la otra parte, el dueño, se obliga a pagar el precio convenido en la forma y tiempo así pactado". Constructora Bauzá Inc. v. García López, _ D.P.R. _ (1991), 91 J.T.S. 99, *881 pág. 9076.
No existe controversia en cuanto a que siendo P.A. Developers los dueños y desarrolladores de su propio proyecto, contrataron con Hill Construction, para la construcción de la parte estructural de las referidas casas. Hill Construction, como constructora del "carapacho" de las casas, era contratista de P.A. Developers y, como tal, está sujeta a la responsabilidad decenal. Aun en el supuesto de que fuera subcontratista, estaría igualmente sujeta a responsabilidad, ya que todos los técnicos vinculados a un empresario por un contrato de obra están sujetos a la responsabilidad decenal parcial al extremo que lo esté el propio contratista. Carreras v. González Santos, supra, 822 (1981).
y
Dirigimos nuestra atención y atenderemos conjuntamente el primer, segundo y cuarto señalamiento de error, ya que, en síntesis, éstos impugnan las determinaciones de hechos y la apreciación de la prueba hecha por el Oficial Examinador del D.A.C.O.
El primer señalamiento de error impugna que el Juez Administrativo hiciera determinaciones carentes de base sustancial en el récord. Señala específicamente el que concluyera que Hill Construction era responsable por vicios del suelo, ya que tenía conocimiento o debía conocer de estos vicios. Señala además, que erró el Juez Administrativo al inferir sin tener base, que Hill Construction comenzó su fase de construcción antes de que terminara la preparación del terreno.
Como señaláramos anteriormente, existen supuestos en los que el constructor responde, en lo pertinente a este caso, "cuando se trata de vicios del suelo porque entran dentro de lo exigible a cualquier profesional de la construcción". Corp. of the Presiding Bishop v. Purcell, supra.
En el caso de autos, el Ing. Emiliano Ruiz, perito de Hill Construction, señaló que "los terrenos de la urbanización colindante con dicha depresión consisten de rellenos". Punto seguido añade que "[d]e hecho, su supervisor de campo me informó que el relleno colocado detrás de la propiedad del Ingeniero Semideyfue depositado en dos etapas, la primera terminando a unos 20 pies de la pared posterior de la estructura y la segunda terminando en lo que constituye el comienzo del acantilado que termina en la antes mencionada zanja de disposición. Esa segunda fase de depósito fue efectuada después de que el cascarón estructural de la vivienda había sido terminado. La altura de dicho acantilado es considerable, por lo que se puede presumir que en el sitio existen rellenos de gran espesor, lo cual es típicamente propiciador de asentamientos". De las declaraciones del ingeniero Ruiz, podemos inferir que efectivamente se hizo una segunda fase de depósito de relleno después de que el cascarón estructural de la vivienda, del ingeniero Semidey, había sido terminada. Aunque no habla el ingeniero Ruiz específicamente del terreno de la residencia de Escribano, basándose en sus declaraciones, el Juez Administrativo concluyó en su resolución que ”[d]el informe de su perito estructural, el Ing. Emiliano Ruiz, al final de la primera página —refiriéndose a las declaraciones antes citadas— se desprende que la construcción de la estructura comenzó aún cuando no se había terminado de tirar relleno en esa área". Esa inferencia, hablando del "área" en general, dentro de las circunstancias del caso de autos, no es irrazonable. Hill Construction no nos ha demostrado que exista otra prueba en el récord administrativo que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada.
De igual forma, la conclusión del Juez Administrativo de que el conocimiento y experiencia de Hill Construction debió indicarle que el solar no estaba apto para construir, se sostiene por la prueba. Aunque el vicio de suelo no era evidente a simple vista, y aunque Hill Construction no hubiese realizado el estudio de suelo ni tuviera el control total sobre la obra, lo cierto es que tampoco ofreció prueba de que exigiera del dueño de la obra una certificación de un ingeniero de suelos de que el solar estuviera listo y apto para construir, en circunstancias como la de autos, donde su propio perito señaló en su informe que "[rjesulta evidente que los terrenos de la urbanización colindantes con dicha depresión consisten de rellenos".
En el régimen de la responsabilidad decenal, existe una presunción rebatible de culpa por parte de todo inventor en el diseño y construcción de la obra. Acevedo v. Viñas Sorbá, supra, 638 (1981).
*882 La preponderancia de la evidencia presentada nos da base suficiente para concluir que Hill Construction debió haber conocido las condiciones del suelo donde edificó.
En el cuarto señalamiento de error se impugna la apreciación de la prueba pericial al alegar que se le dio "crédito a conjeturas del perito de los demandantes que no estaban apoyadas en la prueba que tuvo el perito ante sí, según surge del propio informe que obra en autos". Las "conjeturas del perito" que ahora levanta como que no están apoyadas en la prueba, no fueron objetadas ni impugnadas con prueba en contrario. Hill Construction tampoco nos ha demostrado que exista otra prueba en el récord administrativo que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada. Por consiguiente, la prueba avala y sostiene la conclusión de que Hill Construction es responsable bajo el Art. 1483 del Código Civil, 31 L.P.R.A. see. 4124.
VI
En el tercer señalamiento de error, se cuestiona la determinación del Juez Administrativo al concluir que Hill Construction había asumido la responsabilidad por los daños de Escribano al repararle las grietas en su estructura. No obstante, este error no afecta en ninguna forma la responsabilidad ya establecida de Hill Construction.
Los casos citados por el Oficial Examinador, Pereira v. Ibec, 95 D.P.R. 28 (1967) y González v. Centex, 103 D.P.R. 82 (1974), son claramente distinguibles del caso de marras. En estos casos el Tribunal Supremo concluyó que ambas compañías se habían obligado a reparar los daños. Claro está, un contratista podría venir obligado a reparar un vicio si ha sido contratado como parte de la garantía que se haya otorgado entre las partes, y podía incurrir en responsabilidad si la reparación es inadecuada y causa perjuicios. Esta no es la situación en el caso de autos.
Contrario a los casos citados por el Oficial Examinador, en el caso de autos, la prueba estableció básicamente que Hill consintió a reparar defectos, sin obligarse por ello a sanar los vicios. Sin embargo, como señaláramos anteriormente, este error no afecta la responsabilidad ya establecida de Hill Construction.
En su quinto señalamiento de error, Hill Construction cuestiona la negativa del Juez Administrativo de no admitir en evidencia documentos sometidos a la Administración de Reglamentos y Permisos que eran altamente relevantes a la reconsideración que había acogido. Este señalamiento es inmeritorio.
Como parte de las garantías al debido proceso de ley, la L.P.A.U. en su Art. 14 establece el "derecho a que la decisión [del caso ante una agencia administrativa] sea basada en el expediente". 3 L.P.R.A. sec. 2151(d). La observancia del debido proceso de ley exige que la decisión esté basada exclusivamente en la evidencia presentada. Hill Construction pretende traer en revisión documentos que no formaron parte de la prueba oral o de la evidencia presentada y que el Oficial Examinador no tuvo ante su consideración al momento de emitir su resolución. "Es un principio básico en este campo con mucha solera que toda la evidencia pertinente disponible tiene que ser presentada primeramente ante la agencia. Cualquier cuestión que no haya sido traída ante la consideración de la agencia no podrá ser objeto de revisión por el tribunal". Fernández Quiñones, Demetrio; Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Ira ed.; Editorial Forum, Colombia, 1993, pág.175. Este error tampoco fue cometido.
En el sexto señalamiento de error se cuestiona la negativa del Juez Administrativo de no acceder a la solicitud de Hill Construction para que se le notificara la moción de reconsideración que presentara Escribano y que procediera a acoger la misma, y emitir una resolución final negándole así la oportunidad de ser oída. No le asiste la razón.
La notificación es un requisito indispensable para la validez del procedimiento administrativo adjudicativo. A través de la notificación, se le informa a la parte querellada de las alegaciones en su contra, y se le concede oportunidad razonable para contestar. El Art. 14 de L.P.A.U., 3 L.P.R.A. see. 2151, dispone, en lo pertinente:

*883
"En todo procedimiento adjudicativo formal ante una agenda se salvaguardan los siguientes derechos:

(a) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

(b) Derecho a presentar evidencia.

(c) Derecho a una adjudicación imparcial.

(d) Derecho a que la decisión sea basada en el expediente."

Sin embargo, este estatuto queda silente en torno a la notificación de una solicitud de reconsideración. Este silencio presupone que ésta es materia a ser cubierta por el reglamento que apruebe la agencia para crear su procedimiento adjudicativo. A tenor con dicha disposición legal y conforme al Artículo 6(g) y 8(a) de la Ley Núm. 5 del 23 de abril de 1973, según enmeridada, D.A.C.O. aprobó el Reglamento de Procedimiento de Querellas Núm. 4012 de 23 de agosto de 1989. La Regla 36 de dicho Reglamento establece todo lo relacionado con el proceso de reconsideración ante la agencia. Específicamente, la Regla 36.3 dispone que "[tjoda solicitud de reconsideración deberá notificarse a la otra parte y así certificarse en la propia solicitud. El Departamento podrá corregir cualquier defecto de notificación". El incumplimiento con dicha disposición legal, violenta el derecho a ser oído, parte del debido proceso de ley. Sin embargo, como parte de nuestra función revisora, brindamos esta oportunidad ahora.
Cierto es que la reconsideración presentada por la señora Escribano se concentraba en dos aspectos puramente de derecno. Allí se solicitaba el que se le impusiera responsabilidad solidaria a todos los querellados y, además, que la cantidad.de dinero concedida por pagos efectuados a la hipoteca, cantidad estimada hasta el-momento de la celebración de la vista, se actualizara para reflejar lo pagado hasta el momento de emitida la resolución.
En el caso de autos, la compañía que realizó el estudio del terreno fue Geotec; Montilla y Látimer fueron los arquitectos que diseñaron las casas modelos; López y Grillasca construyeron la parte estructural de las casas; y P.A. Developers, fueron los encargados de preparar el terreno, aunque en realidad no siguieron las especificaciones del estudio de terreno para compactarlo. Nos toca determinar hasta qué punto responde cada técnico que intervino en la obra.
Nuestro Tribunal supremo ha resuelto que "...jija carga de la prueba corresponde a los presuntos deudores. De existir alguna indicación de posible concausalidad y consiguiente en impedimento o inconveniente en la asignación de culpas debe asegurársele al dueño y sus causahabientes la reparación íntegra del daño a través de la responsabilidad in solídum, con debida oportunidad al contratista y al arquitecto para que disputen entre sí la porción de los daños que les corresponde asumir". Acevedo Hernández v. Viñas Sorbá, 111 D.P.R. 633, 638. La solidaridad normalmente no nace fuera de acuerdo de las partes, excepto cuando la ruina se origina en culpa conjunta o cuando la causa del defecto es indeterminable o cuando hay concurrencia de culpas y éstas se encuentran tan íntimamente ligadas que no es posible separarlas. Carreras v. González, supra.
En el caso de autos, si bien todos los querellados de una forma u otra han demostrado que su participación en el desarrollo del proyecto fue limitada, no se demostró que la ruina ocurriera por causa a ellos imputable. Corp. of the Presiding Bishop v. Purcell, supra. Los daños en el caso ante nos, se deben, según se desprende de las determinaciones de hechos y de los escritos ante este foro, a la culpa conjunta de los arquitectos, Montilla & Látimer, quienes diseñaron las casas para la urbanización; los ingenieros, López & Grillasca, que fueron los diseñadores estructurales de dichas casas, ambos (los arquitectos e ingenieros) a cargo del proyecto y de la supervisión del proyecto; del desarrollador, P.A. Developers, que no siguió las indicaciones del estudio del terreno; y del contratista, Hill Construction, que debió conocer de los vicios del suelo y que construyó antes de tiempo, es decir, antes de haberse preparado el terreno para ello. No encontramos prueba alguna que justifique el que D.A.C.O. vulnerara la responsabilidad solidaria de los querellados frente al dueño de la obra. Ante este cuadro fáctico, los arquitectos, Federico Montilla y Russell Látimer; los ingenieros, José A. López y Angel Grillasca; el desarrollador, P.A. Developers (Pablo Abich); y el contratista, *884 Hill Construction son todos solidariamente responsables frente al dueño, Escribano, sin perjuicio de la acción de nivelación que aplique entre ellos. Como ya hemos dicho, todos los técnicos vinculados a un empresario por un contrato de obra están sujetos a la responsabilidad decenal parcial al extremo que lo esté el propio contratista. Carreras v. González Santos, supra.
En cuanto a la cantidad de dinero adicional que el D.A.C.O. le concedió a Escribano en su reconsideración por los pagos efectuados al gravamen hipotecario, cantidad que D.A.C.O. calculó hasta el momento de la celebración de la vista administrativa, y que actualizó para reflejar lo pagado hasta el momento de emitida su resolución en reconsideración, y los subsiguientes pagos que Escribano hiciera con posterioridad a dicha fecha, proceden en derecho. Hill Construction cuestiona en su recurso su responsabilidad, pero no cuestiona el remedio concedido por D.A.C.O.
Por todo lo cual, expedimos el recurso de revisión y modificamos la resolución del D.A.C.O. para incluir como deudores solidarios a Montilla & Látimer, López & Grillasca, P.A. Developers (Pablo Abich), y Hill Construction frente a la dueña de la propiedad, Gloria Escribano Concepción y su esposo Vicente Rodríguez Nieves, sin perjuicio de la acción de nivelación que aplique entre dichos deudores solidarios. Se devuelve el caso al Departamento de Asuntos del Consumidor para procedimientos compatibles con lo aquí resuelto y en particular para que fije la responsabilidad de los deudores solidarios, los intereses a ser pagados y actualice los pagos hipotecarios efectuados por Escribano al gravamen hipotecario.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 45
1. Resolución de D.A.C.O. de 22 de enero de 1996, pág. 50 del apéndice del recurso de revisión.
2. Resolución de D.A.C.O. de 22 de enero de 1996, pág. 52 del apéndice del recurso de revisión.
3. Evidencia sustancial es "...aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels International Inc. v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
4. Resolución emitida por D.A.C.O. el 22 de enero de 1996, pág. 50 del apéndice del recurso de revisión.
5. Apéndice 5, pág. 47 del recurso.