# 2003 DTA 78

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL I

LAS CUEVAS DEVELOPMENT, CORP.
Demandante-Apelante

v.

CONSTRUCTION ENGINEERING, S.E.
Demandada-Apelada

Núm. KLAN-02-00510

San Juan, Puerto Rico, a 22 de abril de 2003

Panel integrado por su Presidenta, la Jueza Fiol Matta,
y los Jueces González Rivera y Rivera Martínez

Rivera Martínez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

La parte demandante-apelante del caso de autos, Las Cuevas Development Corp., presentó el día 29 de mayo de 2002, escrito de apelación. Mediante el mismo, solicita que se revise y se deje sin efecto la sentencia emitida por el Tribunal de Primera Instancia el día 18 de marzo de 2002, en el caso *Las Cuevas Development Corp. v. Construction Engineering, S.E.,* Civil Núm. KAC-2001-4844, sobre impugnación de laudo y arbitraje. La sentencia recurrida fue notificada y archivada en autos el día 30 de abril de 2002.

Luego de ponderar los escritos presentados por las partes, resolvemos confirmar la sentencia recurrida.

**I**

Para el año 1997, Las Cuevas Development Corp. y Construction Engineering, S.E., en calidad de contratistas, suscribieron un contrato para la construcción de un proyecto denominado San Rafael Estates, el cual está compuesto de 30 unidades de vivienda, ubicado en el Municipio de Trujillo Alto.

El contrato suscrito entre las partes para la construcción del mencionado proyecto, disponía para resolución de disputas mediante el procedimiento de arbitraje, bajo las Reglas de la American Arbitration Association.

Durante la ejecución de la obra surgieron varias controversias entre las partes, las cuales fueron sometidas al procedimiento de arbitraje que dio base a la controversia de autos.

Así las cosas, el 5 de abril de 2001, las partes del caso de epígrafe fueron notificadas del laudo emitido por el panel de árbitros. Mediante dicho laudo, se condenó a la demandante-apelante a pagar la cantidad de $1,370,000, más intereses al 12% sobre dicha suma, contados a partir de 30 días de emitido el laudo.

Inconforme con dicho dictamen, Las Cuevas Development (en adelante LCD) presentó demanda sobre impugnación de laudo el 3 de julio de 2001, ante el Tribunal de Primera Instancia. Según se alega, mediante dicha demanda, LCD solicita la revocación de laudo arbitral emitido el 5 de abril de 2001 en el procedimiento de arbitraje llevado en el caso de marras.

En dicha demanda, LCD expone que el *"escueto laudo"* que se impugna, no tiene conclusiones sobre los hechos ni el derecho aplicado. Asimismo, LCD expresa que el laudo en controversia debe revocarse y el caso de autos debe ser devuelto ante un nuevo panel de árbitros por los siguientes fundamentos ■

*"a. El laudo se obtuvo mediante corrupción, fraude y otros medios indebidos. (32 L.P.R.A. sec. 3202).*

*b. El mismo se obtuvo mediante mala fe. (Junta de Relaciones del Trabajo de la Industria Azucarera v. Eastern Sugar Association, 69 D.P.R. 818 (1949).*

*c. El laudo es "de su faz tan palpable y manifiestamente erróneo en la aplicación de las sanas normas que deben regir la disputa, que ello equiva[le] en realidad a la perpetración de un fraude hacia una de las partes que de buena fe se sometió al buen juicio de los árbitros."* Véase, *Autoridad v. Tribunal Superior de P.R.,* 82 D.P.R.

344, 363 (1961).

LCD expone específicamente en su demanda, en lo pertinente a la controversia de autos, lo siguiente: ■

*"Evidentemente, los hechos del caso de autos demuestran que el aquí compareciente asintió a un procedimiento arbitral, viciado desde sus comienzos con fraude, corrupción y mala fe. La parte demandante LCD se sometió al proceso extrajudicial con el fin último de que el buen juicio de los árbitros finiquitaría la controversia a su favor, por la prueba abrumadora que respaldaba sus pretensiones. Sin embargo, las actuaciones de mala fe, fraude y corrupción de la parte demandada Construction Engineering, tergiversaron los hechos materiales y provocaron la emisión de un laudo de arbitraje palpable y manifiestamente erróneo que se aleja de todo criterio de racionabilidad a la luz de los hechos concretos de este caso."*

Así las cosas y luego de varios trámites procesales, la parte demandada contestó la demanda y alegó, en síntesis, que la demanda presentada por LCD, no aduce una causa de acción que de lugar a la concesión de un remedio.

Posteriormente, Construction Engineering presentó ante el Tribunal de Primera Instancia moción de desestimación a tenor con la Regla 10 de Procedimiento Civil. En dicho escrito, Construction Engineering argumenta que de una simple lectura de la demanda, se desprende que la única base o fundamento alegado por la demandante para convencer al Tribunal de Primera Instancia de que hubo un alegado fraude era que la demandada convenció al Panel de Árbitro de que tenía razón en sus contenciones. Los demandados igualmente expresan que la demandante LCD pretende relitigar las controversias planteadas ante el panel de árbitro, ya que no estuvo de acuerdo con la decisión tomada por dicho panel. La parte apelante se opuso a dicha moción mediante moción presentada a los efectos el 6 de marzo de 2002.

A esos fines, el Tribunal de Primera Instancia celebró vista argumentativa y el 18 de marzo de 2002, dictó sentencia desestimando la demanda radicada. Dicha sentencia fue notificada a las partes el 30 de abril de 2002.

Inconforme, LCD presentó ante nos apelación, mencionando que el Tribunal de Primera Instancia cometió los siguientes dos errores: (1) que erró el Tribunal de Primera Instancia al determinar que las alegaciones de la demanda no exponen hechos suficientes que justifiquen la concesión de un remedio conforme a la Ley de Arbitraje de Puerto Rico, y (2) que erró el Tribunal de Primera Instancia al desestimar la demanda sin concluir que la misma no era susceptible de ser enmendada y al no dar oportunidad a los demandantes de subsanar los supuestos defectos alegados por la parte demandada. Veamos.

## II

Por entender que los errores señalados por la parte apelante del caso de autos se encuentran íntimamente relacionados, procederemos a discutirlos conjuntamente.

La Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A Ap. III, R. 10.2, permite a parte contra la cual se presenta una demanda, solicitar la desestimación de la misma por cualquiera de los siguientes fundamentos:

*"a) Falta de jurisdicción sobre la materia;*

*b) Falta de jurisdicción sobre la persona;*

*c) Insuficiencia del emplazamiento;*

*d) Insuficiencia en el diligenciamiento del emplazamiento;*

*e) Dejar de exponer una reclamación que justifique la concesión de un remedio;*

*f) Dejar de acumular partes indispensables."*

Se desprende de la regla transcrita que la misma faculta a la parte demandada en un pleito a solicitar del tribunal la desestimación de la demanda en su contra cuando ésta deje de exponer una reclamación que justifique la concesión de un remedio. El Tribunal Supremo ha resuelto que al disponer de una moción de desestimación, los tribunales de instancia están obligados a dar por ciertas y buenas todas las alegaciones bien alegadas de la demanda. Para prevalecer, el promovente de la moción tiene que demostrar que, aún así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta norma aplica únicamente a los hechos bien alegados y expuestos de manera clara y concluyente. *Pressure Vessels of Puerto Rico v. Empire Gas de P. R. Progasco Inc.,* 137 D.P.R. 497 (1994); *Ramos Lozada v. Unisys v. Ramallo,* 128 D.P.R. 842(1991); *Romero Arroyo v. E.L.A.,* 127 D.P.R. 724 (1991).

Al considerar una moción de desestimación, la demanda debe ser interpretada lo más liberalmente posible a favor de la parte demandante y sus alegaciones se examinarán de la manera más favorable a ésta. La demanda no deberá ser desestimada, a menos que se desprenda con toda certeza que la parte demandante no tiene derecho alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. Así, entonces, el deber del tribunal es considerar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficientemente válida. *Pressure Vessels of Puerto Rico v. Empire Gas de P. R. Progasco Inc., supra; González Camacho v. Santos Cruz,* 124 D.P.R. 396 (1989).

De esta forma, las alegaciones contenidas en la demanda sirven para notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. Para precisar con exactitud cuáles son las verdaderas cuestiones en controversia y aclarar cuáles son los hechos que deberán probarse en el juicio, es imprescindible recurrir a los procedimientos de prueba. *Banco Central v. Capital Plaza,* 135 D.P.R.760 (1994). Entonces, para poder determinar si se justifica la desestimación de la demanda, es necesario examinar los elementos que configuran las respectivas causas de acción bajo nuestros ordenamientos jurídicos.

Ahora bien, la demanda presentadas por LCD solicita la revocación de un laudo arbitral, emitido al amparo de la Ley de Arbitraje de Puerto Rico y las reglas de American Arbitration Asocciation. La Ley de Arbitraje de Puerto Rico, Ley Núm. 376 de 8 de marzo de 1951, según enmendada, 32 L.P.R.A. sec. 3201 y sig. (en adelante la Ley de Arbitraje), constituye el andamiaje legal, en conjunto con la Regla anteriormente citada, para disponer del caso de autos.

Dispone dicha ley que *"[d]os o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de esta ley, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro sugiere entre ellos de dicho acuerdo o en relación con el mismo."* Art. 1, Ley de Arbitraje, 32 L.P.R.A. sec. 3201. A su amparo, todo convenio de arbitraje es válido, exigible e irrevocable, salvo por los fundamentos que existieran en derecho para la revocación. Art. 1, Ley Arbitraje, *supra.*

Según la Ley de Arbitraje, los únicos motivos que darían lugar a la revocación de un laudo son los siguientes:

*"a) si se obtuvo mediante corrupción, fraude u otro medio indebido;*

*b) si hubo parcialidad o corrupción evidente de los árbitros, o cualquiera de ellos;*

*c) si actúan erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al*

*rehusar oír evidencia pertinente a la controversia, o cuando incurrieron en cualquier error que perjudique los derechos de cualquiera de las partes;*

*d) si se extendieron en sus funciones, o el laudo emitido no resolvió de manera final y definitiva la controversia; y*

*e) si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitraje. Art. 22, Ley de Arbitraje, 32 L.P.R.A. sec. 3222."*

Así, también, la Ley de Arbitraje, en su Art. 23, enumera las circunstancias en que los tribunales pueden intervenir para modificar o corregir laudos de arbitraje comercial. Dispone la ley que un tribunal podrá dictar orden modificando o corrigiendo el laudo:

*"(a) Cuando hubo evidente error de cálculo en cuanto a las cifras, o evidente error en la descripción de cualquier persona, cosa o propiedad.*

*(b) Cuando los árbitros hayan resuelto sobre materia no sometida a ellos.*

*(c) Cuando el laudo sea imperfecto en materia de forma, sin afectar los méritos de la controversia."*

Igualmente, el Tribunal Supremo estableció en el caso de *Emilio Febus v. MARPE Construction Corp.,* 135 D.P.R. 206 (1994), que *"con respecto a los laudos de arbitraje, hemos resuelto que no se puede inquirir sobre el proceso deliberativo, mental y decisional del árbitro. En los laudos que no son conforme a derecho, los tribunales no deben revisar alegados errores en la apreciación de la prueba o en la aplicación de la norma de derecho, a pesar del sentir concurrente o disidente que puedan albergar. En estos laudos, las determinaciones de un árbitro, en cuanto a los hechos y en cuanto a derecho, son finales y no revisables por los tribunales, aunque haya mediado error por parte de éstos en la apreciación de los hechos y el derecho aplicable, y aun cuando el tribunal hubiese llegado a una conclusión distinta.*

### III

En el caso de autos, la parte apelante alega en su escrito de apelación que de las alegaciones 18 a la 24 de la demanda, se exponen detalladamente los hechos que sustentan las bases de impugnación del laudo. Dichas alegaciones se transcriben a continuación:

*"18. La conducta de la parte demandada Construction Engineering estuvo plagada de mala fe, corrupción y fraude hacia la parte demandante y al panel de árbitros durante todos los hechos de este caso y durante el proceso de arbitraje.*

*19. En primer término, hay que mencionar que el testigo principal de la parte demandada Construction Engineering fue su Socio Gestor, el Ingeniero Carlos Hernández. Sin embargo, el señor Hernández no tenía conocimiento personal de lo que ocurría en el proyecto, porque éste nunca lo visitaba. Su testimonio se fundamenta en información y creencia inexacta y poco confiable.*

*20. El Sr. Hernández nunca hizo llegar a la parte demandante LCD, como disponía el contrato entre las partes, varias de las reclamaciones que elaboró en el proceso de arbitraje y que dieron base al laudo que se impugna en este procedimiento. Estas reclamaciones elaboradas en el proceso de arbitraje fueron preparadas a esos únicos fines y no tienen base en la realidad. Estas reclamaciones falsas sólo tenían el propósito de servir como excusa o defensa a las alegaciones fundadas de incumplimiento que realizó la parte demandante LCD.*

*21. Resulta evidente que el contrato entre las partes establece unos términos claros para la conclusión de las*

*residencias y de las demás obras de 90 y 305 días respectivamente, y que eso fue una condición esencial para contratar y para que el banco ofreciera el financiamiento. LCD y el Banco Bilbao Vizcaya descansaron en las representaciones erróneas y falsas que Construction Engineering terminaría en dichos términos. Sin embargo, con el propósito de justificar su conducta de craso incumplimiento, Construction Engineering alegó, testificó maliciosamente y convenció a los árbitros, de que esas residencias no se podían construir en 90 días y que el término supuestamente real y fijado por él arbitrariamente era de 210 días. La primera vez que se menciona este término de 210 días fue durante el procedimiento de arbitraje en abierta contradicción a lo que Construction Engineering siempre había dicho incluyendo lo que dijo a Banco Bilbao Vizcaya cuando sometió el itinerario para completar las residencias. El asunto del término para construir las residencias y terminar el proyecto fue uno decisivo y sustancial en la determinación errónea de los árbitros sobre quién incumplió los términos del contrato.*

*22. La mala fe y el fraude del contratista demandado Construction Engineering y que es causa directa de su craso incumplimiento, se patentiza con los hechos de que a pesar de la magnitud del proyecto y de los términos específicos para completar el mismo, admite y así declaró su principal oficial ejecutivo, Ing. Carlos Hernández, que sólo tenía una brigada para cada área. De esa forma, a manera de ejemplo, cuando la brigada de pisos estaba trabajando en una residencia, no podía adelantarse el trabajo de las restantes 29, ya que no existía el personal suficiente para adelantar más de una casa a la vez. Esto fue una abierta violación a lo pactado, ya que Construction Engineering se comprometió a utilizar varias brigadas. Además, esa era la única manera de cumplir con el contrato suscrito entre las partes.*

*23. La parte demandada Construction Engineering incumplió con los términos de entrega de las residencias y el proyecto, reclamó unos dineros que LCD tenía pleno derecho a retener por razón de dicho incumplimiento y entonces recurrió al proceso de arbitraje. El contrato de construcción suscrito entre las partes, estipula claramente que al someterse al procedimiento de arbitraje no exime del cumplimiento específico de todos los términos y condiciones del contrato. Sin embargo, Construction Engineering abandonó de mala fe el proyecto y agravó los daños que ya estaba sufriendo LCD al tener que continuar con la construcción de las 6 unidades que Construction Engineering dejó sin terminar.*

*24. Un contratista que demora 591 días en la construcción de un proyecto, cuando el término total pactado es de 305, ciertamente ocasiona severas pérdidas al desarrollador. Si a eso se suma que el contratista no terminó la obra y el desarrollador tuvo que invertir $885,695.00, para poder terminar el proyecto, y además, preparó reclamaciones falsas para un proceso de arbitraje, las cuales no había sometido nunca al desarrollador, se puede concluir que el contratista esta obrando de mala fe y corruptamente. Todos esos factores, condujeron al atropello de un laudo confiscatorio por un total de $1,428,846.45 y que no tiene ni una sola conclusión sobre los hechos y el derecho, basado en las reclamaciones falsas y actuaciones de mala fe, que chocan con el sentido de justicia y resulta un* **laudo de su faz tan palpable y manifiestamente erróneo en la aplicación de las sanas normas que deben regir la disputa, que ello equiva[le] en realidad a la perpetración de un fraude hacia una de las partes que de buena fe se sometió al buen juicio de los árbitros."**

De las alegaciones de la demanda anteriormente transcritas, se desprende que LCD impugna el laudo emitido, por haber sido alegadamente obtenido mediante corrupción, fraude o por ser de su faz tan palpable y manifiestamente erróneo en la aplicación de las normas que deben regir la disputa, que ello equivale a un fraude.

El Tribunal Supremo de Puerto Rico en el caso de *Junta de Relaciones del Trabajo de la Industria Azucarera v. Eastern Sugar Association, supra*, expresó que un laudo puede ser impugnado o anulado si existe algún defecto en la sumisión o cuando se demuestra que ha habido falta de jurisdicción, fraude, mala fe, corrupción o conducta impropia de parte del comité arbitral, o violación de la política pública o cuando el laudo no resuelve todas las cuestiones en controversia que se sometieron.

Contrario a lo alegado por la parte apelante del caso de autos, de la alegaciones de la demanda ni del escrito presentados ante nos, se desprende que el laudo aquí en controversia haya sido emitido mediando mala fe, corrupción o que el mismo haya sido erróneo en la aplicación de las normas.

A esos efectos, el Tribunal Supremo en el caso de *Figueroa v. Banco de San Juan*, 108 D.P.R. 680 (1979), expresó que *"[c]omo es sabido, el fraude no sólo tiene que ser afirmativamente alegado, sino que debe exponerse detalladamente las circunstancias que constituyen el mismo"*.

El concepto de *"fraude"* es definido como *"engaño o inexactitud consciente, dolo, abuso de confianza que produce o prepara un daño generalmente material"*. ■ También se define como *"engaño que se hace a uno para procurarse una ventaja en detrimento de él"*. ■ Así bien, se desprende de las definiciones transcritas, que para que se entienda que haya ocurrido un fraude es necesario que se pruebe la comisión de actos engañosos intencionales, con el fin de beneficiarse de dicho engaño.

De otra parte, el concepto de *"corrupción"* se define como *"acción de corromper o corromperse"*. A su vez, *"corromperse"* se define como *"alterar y trastocar la forma [de una cosa]...; viciar, pervertir...; sobornar o cosechar [al juez o a otra autoridad] con dádivas, beneficios, ect..."*. ■ Para que se entienda que ha ocurrido un acto de corrupción, es necesario que ocurran actos de soborno o perversión.

Como indicáramos, la parte apelante argumenta que de las alegaciones 18 a la 24 de la demanda en controversia, surge clara y adecuadamente los hechos que constituyen la mala fe, la corrupción y el fraude, los cuales dan base a la revocación del laudo. No le asiste la razón.

En el presente caso, aun tomando como ciertas todas las alegaciones de la demanda, no encontramos hechos constitutivos de fraude, mala fe, ni corrupción.

Ahora bien, la parte apelante plantea que erró el Tribual de Primera Instancia al desestimar la demanda sin haber concluido que la misma no era susceptible de ser enmendada. No le asiste la razón nuevamente a la parte apelada.

Según se desprende de la totalidad del expediente apelativo, la posición de la parte apelante en cuanto a este punto ha sido que las alegaciones de la demanda presentadas fueron y son suficientes para que se de la revocación del laudo. Tampoco se desprende que, luego de presentada la moción de desestimación ante el Tribunal de Primera Instancia bajo la Regla 10 de las de Procedimiento Civil, ésta solicitara enmendar la demanda o alegar al menos la posibilidad de subsanar la misma.

## IV

Por todos los fundamentos anteriormente expuestos, concluimos que el Tribunal Primera Instancia actuó correctamente al desestimar la demanda en controversia, toda vez que la misma no aduce hechos que justifiquen la concesión de un remedio.

Por todo lo anterior, resolvemos confirmar la Sentencia del Tribunal de Primera Instancia.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2003 DTA 78

**1.** Por la importancia que estos fundamentos tienen en la controversia de marras, se transcriben literalmente, del escrito de la demanda, que acompaña como apéndice al escrito de la parte apelada.

**2.** Ver pág. 149 del Apéndice del escrito de la parte demandante, el cual corresponde a la pág. 10 de la demanda en controversia.

**3.** Véase, Rivera García, Ignacio, *Diccionario de Términos Jurídicos*, 2da edición revisada, Ed. Equity Publishing Corp., 1985, pág. 108.

**4.** Véase, *Diccionario General Ilustrado de la Lengua Española*, Vox, Primera Edición, Ed. Bibliograf, Barcelona, 1992, pág. 524.

**5.** Véase, *Diccionario General Ilustrado de la Lengua Española*, Vox, Primera Edición, Ed. Bibliograf, Barcelona, 1992, pág. 306.